**Richard M. STROTT, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

No. 90–296.

United States Court of Veterans Appeals.

Submitted June 29, 1990.

Decided Jan. 10, 1991.

Frank A. Conte, Washington, D.C., on the pleadings, for appellant.

Raoul L. Carroll, Gen. Counsel, Andrew J. Mullen, then Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and David W. Engel, Washington, D.C., on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Associate Judges.

NEBEKER, Chief Judge:

Appellant, Richard M. Strott, has noted an appeal from a denial by the Board of Veterans' Appeals (BVA) of his claim for service-connected paranoid schizophrenia. The Secretary of Veterans Affairs moved to dismiss the appeal noting that appellant's Notice of Disagreement (NOD) was filed prior to November 18, 1988. Appellant contends that a valid NOD was not filed until February 28, 1989, after November 18, 1988, the threshold date for jurisdiction. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988). Alternatively, appellant challenges the constitutionality of limiting judicial review of BVA decisions to cases where an NOD was filed on or after November 18, 1988. After consideration of the supporting memoranda and a review of the record, the Secretary's motion is granted and the appeal is dismissed for lack of jurisdiction.

I.

On February 6, 1985, appellant filed a claim for benefits alleging, *inter alia*, service connection for paranoid schizophrenia. Rating decisions issued September 26, 1985, December 9, 1985, and January 22, 1986, denied entitlement for appellant's claim. However, non-service-connected pension benefits were granted by a Regional Office rating decision issued May 30, 1986. The benefits granted entitlement, effective December 9, 1985, for a paranoid schizophrenic condition found to be 70% disabling.

Appellant appealed the issue of service connection to the BVA. After remanding the case for development of additional evidence, the BVA denied benefits for a service-connected psychiatric disability on February 4, 1990.

II.

The Secretary's motion to dismiss this appeal for lack of jurisdiction is premised on an NOD filing date which predates the Court's statutory grant of jurisdiction, November 18, 1988. *See* Veterans' Judicial Review Act § 402. This Court has previously held that its jurisdictional predicate must be strictly construed and is not subject to equitable or flexible extensions. *Doub v. Derwinski,* 1 Vet.App. 17, 18 (1990); *Skinner v. Derwinski,* 1 Vet.App. 2, 3 (1990).

The preliminary record discloses that appellant's counsel filed an NOD with the Regional Office by letter dated October 17, 1985. However, counsel was notified in January 1986 that the NOD was "not in order" because counsel was not recognized as the veteran's representative. By letter dated February 5, 1986, counsel, on behalf of appellant, sent a letter to appellant's Regional Office stating that appellant, through his court appointed guardian, disagreed with the rating decision issued January 22, 1986. This rating decision denied benefits for service-connected paranoid schizophrenia and confirmed the previous

rating decisions of September 26, 1985, and December 9, 1985.

On appeal, appellant contends that neither the letter dated October 17, 1985, nor the letter dated February 5, 1986, can operate as an effective NOD because neither was personally signed by the appellant. Appellant further contends that February 28, 1989, the date appellant signed VA Form 1–9 (Appeal to Board of Veterans' Appeals), is the first effective NOD he submitted and that the Court, therefore, has jurisdiction to hear his appeal.

■ Appellant's arguments tacitly assume that there can only be one effective NOD. However, since the time appellant filed his pleadings opposing the Secretary's motion to dismiss, this Court has noted "that there can be more than one NOD filed under certain circumstances with respect to the same claim." *Whitt v. Derwinski,* 1 Vet.App. 40, 42 (1990).

Appellant mistakenly asserts that the letters of October 17, 1985, and February 5, 1986, are invalid NOD's because they were not personally signed by him. *See* 38 U.S.C. § 4005(b)(2) (1988); 38 C.F.R. § 19.-118 (1989). Despite this error, both parties correctly agree that neither the letter of October 17, 1985, nor the letter dated February 5, 1986, can serve as the jurisdictional predicate for appellate review in this Court.

■ The only remaining issue is whether appellant's submission of VA Form 1–9 can qualify as an effective NOD, thus allowing jurisdiction in this Court to attach. Section 4005(b)(1) of title 38 U.S.C. (1988) provides in relevant part: "[A] notice of disagreement shall be filed within one year from the date of mailing of notice of the result of initial review or determination.... A notice of disagreement postmarked before the expiration of the one-year period will be accepted as timely filed."

As part of VA Form 1–9, appellant lists the "date of decision being appealed" as June 2, 1986. If this were the date of the decision being appealed, it obviously would not be within the one year time period described in § 4005(b)(1). There is, however, no record of any adjudication dated June 2, 1986. In fact, the only document dated June 2, 1986, is a Statement of the Case prepared by the Regional Office. Regardless, the result is the same.

A Statement of the Case is only prepared after an appellant expresses dissatisfaction with an adjudication by the agency of original jurisdiction and that dissatisfaction is not resolved. 38 U.S.C. § 4005(d)(1) (1988); *see also* 38 C.F.R. § 19.120 (1989). It follows, therefore, that the notice of the adjudication must have been mailed prior to the preparation of the Statement of the Case dated June 2, 1986. Consequently, it is not possible that VA Form 1–9 was filed within the one year period set forth in § 4005(b)(1). Accordingly, appellant's submission of VA Form 1–9 may not serve as an effective NOD in this case.

### III.

Appellant also challenges the constitutionality of § 402 of the Veterans' Judicial Review Act which limits judicial review of BVA decisions to cases where the NOD was filed on or after November 18, 1988. Section 402 reads: "[The Veterans' Judicial Review Act] shall apply with respect to any case in which a notice of disagreement is filed under section 4005 of title 38, United States Code, on or after the date of the enactment of this Act [November 18, 1988]."

Appellant asserts that § 402 violates his Fifth Amendment right to due process because it has no rational or reasonable basis for differentiating between persons who may and may not appeal from decisions of the BVA to this Court. Appellant further charges that interpreting § 402 to exclude a class of claimants from judicial review is inconsistent with the underlying purpose of creating judicial review for veterans' claims.

■ It is well settled that, although the Fifth Amendment's Due Process Clause does not contain an equal protection clause, it does encompass equal protection principles and forbids discrimination that is so unjustifiable as to violate concepts of

due process. *Mathews v. de Castro*, 429 U.S. 181, 182 n. 1, 97 S.Ct. 431, 432 n. 1, 50 L.Ed.2d 389 (1976); *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 173 n. 8, 101 S.Ct. 453, 458 n. 8, 66 L.Ed.2d 368 (1980). When social and economic legislation enacted by Congress is challenged on equal protection grounds as violating the Fifth Amendment, the rational-basis test is the appropriate standard of judicial review. *Fritz*, 449 U.S. at 175, 101 S.Ct. at 459. Both parties correctly agree that in order to find § 402 constitutionally defective, appellant must demonstrate that the varying treatment of different groups or persons is not rationally related to the achievement of a legitimate congressional purpose. *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960). In applying the rational basis test, "[i]f the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Fritz*, 449 U.S. at 175, 101 S.Ct. at 459 (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911)). Thus, courts will not invalidate on equal protection grounds legislation which it deems unwise or unartfully drawn. *Id.*

■ There are two bases on which we conclude that the jurisdictional date set in § 402 is a reasonable exercise of legislative power in distributing the newly created right of judicial review. First, but by no means most important, is the understandable concern that a new court, without antecedent entity, not be burdened with a virtually instant backlog of cases from claims of veterans or their survivors perhaps reaching back as far as World War I. Indeed, Senator Cranston, in explaining the selection of the jurisdictional date, referred to the necessity to ensure that the Court "become fully operational before it receives its first significant number of cases." 134 Cong.Rec. S16650 (daily ed. October 18, 1988) (statement of Senator Cranston).

Of more importance is the need for a degree of finality in the decision making process. It is evident that Congress was sensitive to the need for limiting review of all past Board decisions. "Except [for new and material evidence], when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 4004(b) (1988). In Court decisions, this policy is recognized as "issue and claim preclusion" and historically called *"res judicata."* It simply means that decisions once made are not subject to reexamination except for compelling reasons. If it were otherwise, society could not rely on our duly constituted decision making process.

To be sure, a veteran may at any time seek to reopen a claim, but only by presenting new and material evidence. 38 U.S.C. § 3008 (1988). Nevertheless, an effort to preserve the rules of issue and claim preclusion forms a rational basis for a jurisdictional date denying judicial review to some and granting it to others. *See* Restatement (Second) of Judgments § 83 (1982); 4 K. Davis, Administrative Law Treatise § 21.9 (2d ed. 1983). The Supreme Court has stated, "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *University of Tenn. v. Elliott*, 478 U.S. 788, 797–98, 106 S.Ct. 3220, 3225–26, 92 L.Ed.2d 635 (1986) (quoting *United States v. Utah Constr. and Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966)).

"Where, as here, there are plausible reasons for Congress' action, our inquiry is at an end. It is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision.'" *Fritz*, 449 U.S. at 178–79, 101 S.Ct. at 461 (quoting *Flemming v. Nestor*, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435). Because the impact of the jurisdictional limitation is neither invidious nor irrational, it is consistent with the requirements of due

**118**

process. *Id.* 449 U.S. at 176, 101 S.Ct. at 460.

Accordingly, the Secretary's motion is granted and the appeal is dismissed for lack of jurisdiction.