# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-1322

THEODORE L. BISSONNETTE, JR., APPELLANT,

v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE

On Appeal from the Board of Veterans' Appeals

(Decided    June 15, 2004  )

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Robert W. Legg*, all of Washington, D.C., were on the brief for the appellee.

Before IVERS, STEINBERG, and GREENE, *Judges*.

STEINBERG, *Judge*:  The appellant, through counsel, seeks review of an April 6, 2001, Board of Veterans' Appeals (Board or BVA) decision that dismissed for lack of jurisdiction under the doctrine of res judicata his claim for an effective date earlier than May 27, 1993, for an award of Department of Veterans Affairs (VA) service connection for a seizure disorder; that claim included the issue whether a Notice of Disagreement (NOD) was filed as to a January 1968 VA regional office (RO) decision denying service connection for a seizure disorder.  Record (R.) at 1. The appellant and the Secretary each filed a brief, and the appellant filed a reply brief.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons that follow, the Court will affirm the Board decision.

## I. Relevant Background

The veteran served honorably on active duty in the U.S. Army from September 1964 until November 1967, including service in Vietnam.  R. at 11.  Upon his entry into service, he had no history of epilepsy.  R. at 15-16.  Beginning in December 1965, his service medical records indicate

that on several occasions he experienced blackout spells and reported seizures. *See*, *e.g.*, R. at 24, 28, 49, 37, 40, 46, 52, 60. Two days before the veteran's discharge, a VA examining physician completed a physical profile record on the veteran and listed as a defect the veteran's "[s]eizure disorder ([e]pilepsy)". R. at 52.

In November 1967, the veteran filed with a VARO a claim for service connection for epilepsy, which, he stated, had "[s]tarted during the middle of 1966 while in Vietnam." R. at 90. In January 1968, the VARO sent a letter to the veteran stating that because he had failed to report for a scheduled examination, the RO had denied his claim; the letter also stated:

> No further action will be taken unless you inform us of your willingness to report for examination by signing the statement below and returning this letter to us. Upon receipt of such notification, an examination will be re[]scheduled and your claim will be reconsidered when the examination is complete.

R. at 93. On January 23, 1968, the RO received from the veteran a letter, which stated: "I received your letter today telling me my claim has been denied. I really don't think you have the right to do so." R. at 95. The veteran then explained why he did not report for examinations and asked: "So Sir if it is possible could it be arrange[d] for me to reopen my claim [and] take the physical exam here at Fort Riley." R. at 96. Also in January 1968, the RO replied that there were no facilities at Fort Riley for an examination and informed the veteran that he should notify the RO if he was able to report "to the VA for an examination at some future date" (R. at 99); in July 1968, the veteran submitted a statement that he was "willing to report for examination for compensation purposes at any time" (R. at 101). In a September 1968 VA examination report, the examining physician during a "special neurologic examination" recorded as a diagnosis "[c]onvulsive disorder, grand mal type", and the examining physician for the "general medical examination" recorded that "[d]iagnoses are pending laboratory work" and listed as his diagnosis "**[h]istory of** convulsive disorder, grand mal type". R. at 106-07 (emphasis added). In December 1968, the RO sent to the veteran a letter stating that he had been scheduled for "a period of hospital observation and examination to determine the extent of [his] disability" but because he did not report for that examination, the RO would "tak[e] no further action in [his] claim . . . until such time [as he was] willing to report for the hospital observation and examination." R. at 114.

2

In May 1971, the veteran filed, through a representative, "an informal claim for reconsideration of compensation benefits." R. at 116. A partially illegible copy of a VA hospital summary reveals that the veteran was admitted for four days for observation and tests in August 1971, but that he had left the hospital apparently before the VA physicians finished a diagnosis; it also appears from the record that he stated that he would prefer to undergo further tests as an outpatient so that he could return to his business at his home. R. at 119. In October 1971, the RO sent to the veteran a letter (1) stating that he had "left the hospital before [his] tests and evaluations could be competed in August 1971", (2) advising him that in order for the RO to process his application, he needed to undergo "an observation and evaluation examination", and (3) requesting that he respond to them within 60 days regarding whether he was "ready, willing, and able to report and remain in the hospital until such examination can be performed." R. at 122. There is no evidence in the record that the appellant ever responded to this letter. *See* R. at 1-398.

In May 1993, the veteran filed, through a representative, an "informal" claim for service connection for his seizure disorder (R. at 124); he filed a formal claim in May 1994 (R. at 127-28). In October 1994, the RO, inter alia, granted service connection for his "seizure disorder" and awarded a rating of 80% for that disability, effective from May 27, 1993, the date of his informal claim. R. at 195-97. The veteran submitted to the RO a "Request for Readjudication", stating that the RO erroneously had failed to adjudicate his claim in 1967 and that, thus, that claim was still pending. R. at 205-06. The RO responded in December 1994 that, in January 1968, it had administratively denied his November 1967 claim because he had failed to report for an examination. R. at 209. On appeal to the Board for an earlier effective date (EED) for his 80% seizure-disorder rating (R. at 230 (Substantive Appeal), 274 (Certification of Appeal), 282-83 (written submission in support of appeal requesting effective date as of date of discharge), the Board in November 1996 denied an effective date before May 27, 1993, because it determined that the veteran had abandoned his November 1967 and October 1971 claims by his failure to report for examinations, within the one-year period following the RO's requests, and that there was thus no prior claim upon which he could be awarded an EED (R. at 292-95). The veteran then appealed to this Court; in a March 1998 single-judge memorandum decision, the Court, inter alia, held as to the November 1967 and May 1971 seizure-disorder claims that (1) pursuant to 38 C.F.R. § 3.158(a) there was "a plausible

3

basis for the Board's finding that the appellant had abandoned those earlier claims by not reporting for his examinations" and (2) there was "a plausible basis for the Board's conclusion that the appellant was not entitled to an effective date earlier than May 27, 1993," for his service-connected seizure disorder. *Bissonnette v. West*, No. 96-1751, 1998 WL 136888, at *4 (Vet. App. Mar. 20, 1998) (*Bissonnette I*).

In September 1998, the veteran filed, inter alia, with the RO a "claim that the [RO] failed to submit a Statement of the Case [(SOC) as] to his [NOD]" filed in January 1968. R. at 309-10. In a June 1999 SOC, the RO stated that no timely NOD was filed as to the January 1968 letter denying the veteran's original claim for service connection. R. at 334-35. Specifically, the RO determined:

> The veteran's letter, received January 23, 1968, did express some disagreement with the VA decision to deny his claim. The disagreement was specific as to the requirement for an examination. This requirement was explained to the veteran and he agreed to report for the examination. The portion of the decision with [sic] which the veteran questioned was addressed and the veteran was apparently satisfied as he agreed to report for the VA examination. Although the letter did express some disagreement with the prior decision, it can not be reasonabl[y] construed, based on the letter and subsequent events, that the veteran desired appellate review.

R. at 335. Following the veteran's August 1999 submission of a Substantive Appeal (R. at 338-55), the RO issued another decision in September 1999; the RO found that the veteran's claim "for service connection for a seizure disorder, initially received [on November 9, 1967,] and reopened [on] July 16, 1968, is considered to be abandoned" because he failed to report for the required examination within one year after notice of the request (R. at 357-58). In making that determination, the RO stated that any argument that the veteran's January 1968 letter constituted a claim to reopen that must now be adjudicated is moot because "the veteran's claim was considered by VA to be formally reopened by his written statement, received in July of 1968, when he reported he was willing to report for VA examination." R. at 358.

In March 2000, after submitting to the Board a memo of additional argument in support of his claim (R. at 371-79), the veteran also submitted, inter alia, to the RO a "formal claim" regarding the RO's "failure to adjudicate a claim for service[-]connected disability" from November 1967 (R. at 382-85). A few days later, also in March 2000, the appellant then submitted to the RO a document,

4

entitled "Notice of Disagreement", which asserted that, although the RO conceded in its September 1999 decision that his July 1968 letter served as a claim to reopen his abandoned 1967 claim, the RO never issued a "[d]ecision with an appropriate notice of his appellate rights" as to that July 1968 claim, and it thus remained open. R. at 388-91. In the Board decision here on appeal, the Board summarized as follows the veteran's four arguments in support of his assertion that his November 1967 claim was unadjudicated: (1) The veteran's January 1968 letter to the RO was an NOD and the RO never issued an SOC in response; (2) the RO failed to inform the veteran in its January 1968 letter denying his service-connection claim that he had one year to report for the exam; (3) the RO erroneously denied the veteran's claim in January 1968, rather than simply "'labeling it as potentially abandoned'"; and (4) the RO's January 1968 letter denying his claim did not advise the veteran of his appellate rights. R. at 6. The Board also noted that the veteran had asserted that his September 1968 examination constituted an informal claim to reopen. *Ibid*. The Board declined to reach those arguments because it determined that they were "foreclosed under the doctrine of *res judicata*"; the Board reasoned:

> In its March 1998 decision, the Court found that the claim [for] service connection for a seizure disorder was adjudicated by the RO in January 1968, and that the claim was denied based on the veteran's failure to report for scheduled VA examinations. The Court also found that the veteran's claim for entitlement to service connection for a seizure disorder was abandoned based on his repeated failure to report for scheduled examinations. . . .
>
> Accordingly, the Court decision dated in March 1998[] found that the veteran's claim [for] service connection received in 1967 was adjudicated and abandoned. In so finding, the argument . . . that the veteran's claim . . . was never finally adjudicated is barred by the doctrine of *res judicata*. Hence, the Board is without jurisdiction to find otherwise.

R. at 6-7 (citing 38 U.S.C. § 7104 and *Morris v. Derwinski*, 1 Vet.App. 260 (1991)). The Board then dismissed the veteran's claim for an EED, to include the issue whether an NOD as to the January 1968 RO decision was timely filed. R. at 7.

5

## II. Contentions on Appeal

As a preliminary matter, the Court notes that, as the appellant concedes, he expressly withdrew (in his August 1999 Substantive Appeal (R. at 341)) his claim of clear and unmistakable error (CUE) in the January 1968 RO decision denying his original claim for service connection. Dec. 2002 Response at 3-5 (noting "error" by counsel for appellant and apologizing for characterizing, in response to Secretary's motion to dismiss, claim as CUE claim); *see Bissonnette v. Principi*, No. 01-1322, 2002 WL 31513330, at *2 (Vet. App. Nov. 12, 2002) (ordering, inter alia, appellant to show cause why Board decision concluding that it had no jurisdiction over CUE claim should not be affirmed). Thus, the now-withdrawn CUE claim is not part of the instant appeal.

In his principal brief, the appellant first argues that the Board incorrectly applied the doctrine of res judicata. Brief (Br.) 7-11. He asserts that the "theory of entitlement to an [EED]" before the Court in March 1998 was solely that he had not abandoned his claim, and that the Court's holding was only that "the original claim of November 1967 **was final** due to the **abandonment** of that claim by the [a]ppellant." Br. at 8-9. On that basis, the appellant concludes that res judicata applies only to the legal determination regarding abandonment but not to the question of law whether the appellant's January 1968 letter was an NOD. Br. at 9. The appellant cites the four elements identified in *Neves v. Brown*, 6 Vet.App. 177, 179 (1993), that render a claim barred under res judicata and concedes that all requirements are met except that the instant case does not involve the same claim as the first; instead, he contends that whether his January 1968 letter is an NOD "**does not involve** the same claim." Br. at 10-11 (citing *Andre v. Principi*, 301 F.3d 1354 (Fed. Cir. 2002), for proposition that "the [a]ppellant can present alternative theories of CUE at any time under 38 U.S.C. § 5109A"). Having asserted that his current claim is not precluded on the basis of res judicata, the appellant then argues (1) that his January 1968 letter was, in fact, an NOD, as to which the RO issued no SOC (Br. at 11-15) and (2) that the BVA violated 38 U.S.C. § 7104(a) by not remanding the claims to the RO for the issuance of an SOC in response to his March 2000 NOD as to the September 1999 RO decision (Br. at 15-18).

In response, the Secretary counters that the April 2001 BVA decision dismissing the appellant's claim "reflected a solid appreciation of the facts and applicable law and should be affirmed." Br. at 5 (citing *Trilles v. West*, 13 Vet.App. 314, 321 (2000) (en banc)). With respect to

res judicata, the Secretary criticizes the appellant's citation to *Andre*, *supra*, and argues that that case is distinguishable from the instant case because (1) *Andre* involved a CUE claim; (2) *Andre* dealt with whether the issue there had been adjudicated by the Board, whereas the instant case deals with whether the claim has already been decided by this Court, a higher tribunal; and (3) in *Andre*, the U.S. Court of Appeals for the Federal Circuit held that each specific allegation of CUE is a new claim, whereas here the appellant is raising "the same claim, albeit with a different twist to his already adjudicated argument as to the finality of the 1968 RO decision, using evidence previously considered by the Court in 1998." Br. at 8. The Secretary also asserts that the appellant "had a fair opportunity to raise this specific argument to the Board and Court in his appeal for an [EED] at [the time of his prior appeal]" that resulted in the Court's March 1998 decision. Br. at 9 (citing *McDowell v. Brown*, 5 Vet.App. 401, 405 (1993)). The Secretary contends that whether the veteran's January 1968 letter was an NOD is precluded as res judicata in light of the Court's prior ruling regarding the finality of the January 1968 RO decision, and he thus declines to address the merits of that argument. Br. at 9-10. Regarding the appellant's argument that the Board failed to require the RO to issue an SOC as to the appellant's March 2000 NOD, the Secretary asserts that the appellant's "'claim' for adjudication of an informal claim in 1999 was not a separate claim, but rather a separate theory of entitlement to an [EED]." Br. at 11 (citing *Andre*, 301 F.3d at 1361).

In his reply brief, the appellant agrees with the Secretary that his current claim for an EED is the same *claim* as the claim denied by the Board in November 1996, but argues that the "theory of entitlement" to the EED claim he is currently pursuing is different from the prior theory; he contests the Secretary's interpretation of *Andre*, *supra*, a case that he claims supports his interpretation and entitles him to an adjudication on the current theory. Reply at 2-5. As to the Secretary's assertion that the appellant had a prior opportunity to raise this argument to the Board and the Court, the appellant states that "[t]here does not exist any compulsory joinder of **all** theories of entitlement . . . in VA law" and that "[t]here is no bar to a claimant, after being unsuccessful in one theory, to thereafter present to the Secretary an alternative theory of non[]finality, not previously presented and considered by the Secretary." Reply at 5-6. The appellant has also filed a notice of supplemental authority notifying the Court of a case decided by the U.S. Court of Appeals for the

7

Ninth Circuit, *Littlejohn v. United States*, 321 F.3d 915 (9th Cir. 2003), after briefing was complete here.

### III.  Analysis

Res judicata is a judicially created doctrine that determines the effect of prior judgments on parties in subsequent adjudications.  GENE R. SHREVE & PETER RAVEN-HANSEN, UNDERSTANDING CIVIL PROCEDURE § 106 (2d ed. 1994).  The doctrine has long included two subdoctrines, one of which was historically called "res judicata" and more recently has been termed "claim preclusion", and the other which was historically called "collateral estoppel" and more recently has been termed "issue preclusion"; res judicata deals with "how a judgment can foreclose subsequent opportunities to bring a claim or cause of action" and collateral estoppel deals with "how a judgment can prevent relitigation of an issue of fact or law."  *Ibid*.; *see also Strott v. Derwinski*, 1 Vet.App. 114, 117 (1991).  In *Neves*, this Court outlined the four requisite elements for a claim to be barred by claim preclusion:

> (1) [T]he Court's prior decision must be a valid and final judgment;
> (2) the latter suit must involve the same claim or cause of action litigated in the first suit; (3) the decision in the original action must have been on the merits; and (4) the same parties must be involved in both cases.

*Neves*, *supra*.

The parties each assert that elements (1), (3), and (4) are met in the instant case, and the Court agrees.  *Ibid*.  Specifically, *Bissonnette I*, *supra*, was a valid and final judgment involving Mr. Bissonnette and the Secretary, and it was rendered "on the merits" – that is, "on the substance of the claim advanced", because the EED claim was denied, *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501-02 (2001) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 19, cmt. a (1980)), and stating that in every jurisdiction "on the merits" denotes decision "that actually 'passes directly on the substance of [a particular] claim'" and is "the meaning intended in those many statements to the effect that a judgment 'on the merits' triggers the doctrine of res judicata or claim preclusion").  *See Neves*, *supra*. The parties appear to disagree, however, over whether the instant appeal "involve[s] the same claim" as *Bissonnette I*; the appellant asserts both (1) that whether his January

1968 letter is an NOD "**does not involve** the same claim" as did the March 1998 decision (Br. at 10-11) and (2) that the Secretary's "assertion that these claims are the same . . . is correct [but that] it is **incorrect** that the theory of entitlement to an [EED] is the same theory previously made [sic] by the [a]ppellant" (Reply at 2).  We reject the appellant's first argument because both the claim before the Court in March 1998 and the claim now on appeal were for an "effective date earlier than May 27, 1993, for the grant of service connection for a seizure disorder." *Compare Bissonnette I*, 2002 WL 31513330, at \*1, *and* R. at 286, *with* R. at 1.  Moreover, the appellant's reliance on *Andre* for his assertion is not persuasive; *Andre* stated that "each 'specific' assertion of CUE constitutes a [separate] claim", and, as the Secretary contends, now that the appellant has withdrawn his CUE claim, that statement has no bearing on the instant appeal.  *Andre*, 301 F. 3d at 1361 (stating that "[o]ur decision turns on the fact that Mr. Andre's case involves CUE claims").

As to the appellant's second argument, he asserts that he is not barred "in VA law" from presenting an additional theory with respect to a previously litigated claim.  Reply at 5-6.   That contention is directly refuted by this Court's caselaw; specifically, in *McDowell*, this Court held that claim preclusion applies to "further claims by the parties or their privies based on the same cause of action, including the issues actually litigated and determined in that suit, *** as well as those which might have been litigated or adjudicated therein***." *McDowell*, 5 Vet.App. at 405 (emphasis added) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 325-26 (1955)); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action" (emphasis added)); *Comm'r v. Sunnen*, 333 U.S. 591 (1948); *cf. Smith (Barbara) v. Derwinski*, 1 Vet.App. 267, 277 (1991) (quoting *Williams v. North Carolina*, 325 U.S. 226, 233-34 (1945), for proposition that res judicata includes issues in a claim that claimant "permitted . . . to pass without objection").  The Court also stated in *Hamilton (Stanley) v. Brown*:

> "The remaining question is simply whether respondents having failed to raise the question in the proceeding to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit.   Such a view is contrary to the well-settled principle that res judicata may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, '***but also***

9

> *as respects any other available matter which might have been presented to that end*."

*Hamilton*, 4 Vet.App. 528, 539 (1993) (en banc) (emphasis added in *Hamilton*) (quoting *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378 (1940)).

In essence, the res judicata precedent ensures that a litigant may have his or her day in Court, but not two or three. The appellant previously had his day in this Court to argue that he is entitled to an effective date earlier than May 27, 1993; his original EED claim was denied by the Board in November 1996 in the context of the Board's finding that he had abandoned November 1967 and May 1971 claims by failing to report for examination (R. at 292-95), and he cannot now assert an EED based on a contention that he filed an NOD as to the RO's denial of that November 1967 claim. *See Federated Dep't Stores*, *McDowell*, and *Hamilton*, all *supra*; *cf. Costantino v. West,* 12 Vet.App. 517, 521 (1999) (refusing to hear arguments raised for first time in appellant's reply brief); *Henderson v. West,* 12 Vet.App. 11, 18-19 (1998) (same); *Carbino v. Gober,* 10 Vet.App. 507, 511 (1997) (same), *aff'd,* 168 F.3d 32, 34 (Fed. Cir.1999) (stating that "cogent reasons for not permitting an appellant to raise issues or arguments in a reply brief" include "unfairness to the appellee who does not have an opportunity to respond and the added burden on the court that a contrary practice would entail"). The latter argument should have been raised in the prior litigation, and the Court, having heard and decided that claim, cannot reopen its doors to hear an argument that could have been raised the first time. Again, the appellant's *Andre* arguments are unavailing in this regard both (1) because *Andre* dealt with CUE claims, which require specific pleadings by a claimant, *see Fugo v. Brown*, 6 Vet.App. 40, 44 (1993), and (2) because the instant case involves the preclusive effect of a prior judicial decision, whereas *Andre* involved specific issues not raised before the department in an underlying CUE adjudication. *See Andre*, *supra*. Finally, because the appellant had a "'full and fair opportunity'" to litigate his claim, there are no due-process concerns that would render inapplicable res judicata to the instant claim. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 480-81 (1982) (citations omitted). The Court has considered the appellant's supplemental notice with regard to *Littlejohn*, *supra*, and does not find that that case persuasively undercuts the res-judicata authority addressed above.

## IV. Conclusion

On the basis of the above analysis, the record on appeal, and the parties' pleadings, the Court holds that the appellant has not demonstrated that the Board committed error in dismissing based on res judicata the appellant's claim for an EED for the award of service connection for his seizure disorder. Accordingly, the April 6, 2001, Board decision is affirmed.

AFFIRMED.