# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-0629

RITA L. DiCARLO, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 28, 2005                    Decided    May 10, 2006  )

*Robert V. Chisholm*, of Providence, Rhode Island, for the appellant.

*Alice M. Szynklewski*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, HAGEL, and LANCE, *Judges*.

KASOLD, *Judge*: Veteran Rita DiCarlo appeals through counsel that part of a December 1, 2002, decision of the Board of Veterans' Appeals (Board) finding that a September 1973 rating decision was final. The Court notes that Ms. DiCarlo does not appeal the Board's denial of her request for revision on the basis of clear and unmistakable error (CUE) in the 1973 regional office (RO) decision.[1] The parties each filed briefs, and the appellant filed a reply brief. Thereafter, the Court heard oral arguments in the case. For the reasons stated below, the Court will set aside the December 2002 Board decision and dismiss this appeal.

---

[1] Although a request for revision on the grounds of CUE is frequently referred to as a "CUE claim" or a "claim of CUE," the Court will use the statutory and regulatory language, as appropriate. *See* 38 U.S.C. §§ 5109A, 7111; 38 C.F.R. §§ 3.105, 20.1400 (2005).

# I. BACKGROUND

Ms. DiCarlo served in the U.S. Army from March 1965 to November 1966. Record (R.) at 16. She was first diagnosed in May 1966 with "depressive reaction, mild to moderate." R. at 45. That diagnosis was revised in October 1966 to "emotionally unstable personality – manifested by poor impulse control, low tolerance for frustration." R. at 49.

In November 1966, Ms. DiCarlo submitted a claim for service connection listing "psychiatric" among the conditions for which she had received treatment while in service. R. at 74. The Secretary scheduled a VA medical examination, but Ms. DiCarlo failed to report for the examination. In February 1967, based upon a lack of medical evidence, the RO denied her claim for service connection. R. at 83. This decision was never appealed.

In 1973, Ms. DiCarlo sought to reopen her claim for, inter alia, a "mental disorder incurred during service due to stress of military service." R. at 89. Her application for compensation noted that she was hospitalized for acute mental breakdown from May to August of 1967. R. at 90; *see also* R. at 85. In August 1973, Ms. DiCarlo received a "special neuropsychiatric examination" that resulted in the diagnosis of an "emotionally unstable personality, associated with hysterical and antisocial features." R. at 98-99. The neuropsychiatrist observed that "[a]s far as can be determined, she has never actually had any serious mental problems other than her own personality difficulties," and he described her as "a typically unstable, immature, acting-out girl, who is in no way psychotic or neurotic." R. at 99. A September 1973 RO rating decision informed Ms. DiCarlo that her nervous condition was not a disability for which compensation may be paid, and that her claim for compensation was denied. R. at 123. Ms. DiCarlo did not appeal the September 1973 decision.

In January 1977, Ms. DiCarlo filed a claim to reopen her nervous condition claim. R. at 125-26. Based upon the submission of private medical records (R. at 139-41) and a VA medical examination (R. at 139-40), a 1979 RO rating decision granted Ms. DiCarlo service connection for schizophrenia and assigned a 50% disability rating effective November 9, 1978 (R. at 160-61). Ms. DiCarlo appealed, seeking an earlier effective date. R. at 164. Although a 1981 Board decision is not in the record on appeal, it is referred to in a 1983 Board decision as having addressed the finality

of the September 1973 RO decision and determined that it was final.[2] The 1981 Board decision also affirmed the determination by the RO that November 9, 1978, was the correct effective date for the award of service connection for Ms. DiCarlo's nervous disorder. R. at 210. The Board Chairman subsequently granted Ms. DiCarlo's motion for reconsideration. The 1983 Board decision on reconsideration determined that the 1981 Board decision had erred in its determination of the effective date for Ms. DiCarlo's disability rating and granted a new effective date of January 25, 1977, the date of the claim to reopen. R. at 210-11. The 1983 Board decision also determined that the 1981 Board decision correctly determined that the 1973 RO decision was final. *Id*.

In 1994 Ms. DiCarlo's representative submitted a letter to the RO alleging CUE in the 1973 RO decision denying service connection and arguing that the RO failed to obtain records from a state mental health facility. R. at 389-91. The representative argued that had those records been obtained in 1973, service connection would have been granted. *Id*. The RO, however, determined that it did not have jurisdiction to consider a request for revision on the basis of CUE in the 1973 RO decision because it believed that decision had been subsumed by the 1983 Board decision. R. at 401. Ms. DiCarlo appealed this determination to the Board. R. at 407.

In November 2001, the Board found, inter alia, that the RO did have jurisdiction to adjudicate a request for revision on the basis of CUE claim in the 1973 RO decision. R. at 467-78. The Board also directed the RO to determine upon remand whether the 1973 decision was final. The Board cited to the then-recent United States Court of Appeals for the Federal Circuit decision in *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999), that had newly found that a decision was not final if it contained grave procedural error. R. at 477-78. Subsequently, in July 2002, the RO determined that the 1973 decision was final and that there was no CUE in that decision.

In her appeal to the Board in 2002, Ms. DiCarlo asserted that she had never received notice advising her of the September 1973 rating decision denying her claim for service-connected benefits; the Board construed this assertion to be an argument against the finality of the 1973 claim. R. at

---

[2] The 1983 Board decision replaced the 1981 Board decision that subsumed the 1979 RO decision, *see* 38 U.S.C. § 7103(a); *Link v. West*, 12 Vet.App. 39, 45 (1998) (once a case is reconsidered by Board, reconsideration decision constitutes final decision of Board and previous Board decision is nullified) (citing *Smith (George) v. Brown*, 8 Vet.App. 546, 550 (1996) (en banc)); *see also Herndon v. Principi*, 311 F.3d 1121, 1125 (Fed. Cir. 2002) (holding that a Board affirmance of an RO decision subsumes that decision); 38 C.F.R. § 20.1104 (2004).

507; *see* R at 7-8. The 2002 Board determined, however, that Ms. DiCarlo had received a September 1973 letter that notified her of the 1973 rating decision. The Board then determined that the 1973 rating decision was final because there was no grave procedural error and because Ms. DiCarlo had not timely filed a Notice of Disagreement (NOD). In addition, the Board found that the statutory and regulatory notice requirements were not applicable in this instance because Ms. DiCarlo had asserted a request for revision on the basis of CUE and that there was no CUE in the September 1973 rating decision that denied service connection for a nervous condition.

## II. APPLICABLE LAW AND ANALYSIS

Ms. DiCarlo asserts on appeal that the 1973 claim is not final because the Secretary never provided her with a copy of the 1973 RO decision and because the September 1973 notice letter, which she now concedes that she did receive, did not contain sufficient detail concerning the rating decision. Appellant's Brief at 8-11. Ms. DiCarlo also asserts that the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000), applies to the issue of whether an RO decision is final. The Secretary asserts that the determination of finality can only be raised through a request for revision on the basis of CUE in the 1983 Board decision.

Although Ms. DiCarlo's argument that the 1973 RO decision remains unadjudicated is modified from the argument presented below, and the matter could be remanded to the Board for consideration, *see Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2000) (if Court has jurisdiction over the claim, issues presented for the first time on appeal may be addressed, disregarded, or remanded back to the Board for further development), the overall issues have been briefed by the parties and remain the same – was the 1973 RO decision final and could the Board in 2002 properly readdress the issue of the finality of the 1973 RO decision. Accordingly, the Court will proceed to address them.

### A. Res Judicata

"Principles of finality and res judicata apply to agency decisions that have not been appealed and have become final." *Cook v. Principi*, 318 F.3d 1334, 1337 (Fed. Cir. 2002) (en banc); *Routen v. West*, 142 F.3d 1434, 1437-38 (Fed. Cir. 1998) (applying finality and res judicata to agency decisions when the requirements of statutory and legal exceptions are not met); *Strott v. Derwinski*,

1 Vet.App. 114, 117 (1991) (determining that the rules of issue and claim preclusion can form "a rational basis for a jurisdictional date denying judicial review to some and granting it to others" and that "'issue and claim preclusion' . . . historically called 'res judicata' . . . means that decisions once made are not subject to reexamination except for compelling reasons").

Traditionally, the principles of finality include two subdoctrines: (1) "Claim preclusion," which addresses the preclusive effect of a judgment upon the subsequent relitigation of a claim or cause of action, *see Bissonnette v. Principi*, 18 Vet.App. 105, 110-11 (2004) (holding that res judicata prevents relitigation of a claim that was previously the subject of a valid and final decision of this Court); *Link v. West*, 12 Vet.App. 39, 44 (1998) ("Under the principle of res judicata, 'once there is a final decision on the issue of [CUE] . . . that particular claim of [CUE] may not be raised again.'" (quoting *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc))), and (2) "issue preclusion," which addresses the preclusive effect of a judgment upon the relitigation of an issue of fact or law, *see Bissonnette*, 18 Vet.App. at 110 (describing collateral estoppel as "dealing with 'how a judgment can prevent relitigation of an issue of fact or law'" (citation omitted)).

The concept of res judicata requires that there be only one valid decision on any adjudicated issue or claim; that decision is the only appropriate target for any future collateral attack on that issue or claim. *Cf. Hazan v. Gober*, 10 Vet.App. 511, 520-21 (1997) (holding that where an unappealed final decision is determinative of an issue, an appellant is collaterally estopped from "relitigating the same issue based upon the same evidence, albeit for a different purpose"). Except as provided by law, when a case or issue has been decided and an appeal has not been taken within the time prescribed by law, the case is closed, the matter is ended, and no further review is afforded. *See Leonard v. Nicholson*, 405 F.3d 1333, 1337 (Fed. Cir. 2005) ("'The purpose of the rule of finality is to preclude repetitive and belated readjudications of veterans' benefits claims.'" (quoting *Cook*, 318 F.3d at 1339)); *Bissonnette*, 18 Vet.App. at 112 ("In essence, the res judicata precedent ensures that a litigant may have his or her day in Court, but not two or three."); *see also Hazan*, *supra*.

B. Exceptions to Finality and the Unadjudicated Claim

Within the veteran-friendly administrative setting, there are numerous exceptions to the rule of finality and application of res judicata. *See generally Smith (William) v. Brown*, 35 F.3d 1516, 1520-21 (Fed. Cir. 1994) (discussing several statutory provisions for vitiating the finality of a Board

decision); *see also Astoria Fed. Savs. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107-08 (1991) ("suitability [of administrative estoppel] may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures"). A prior decision can be revised based on CUE. *See* 38 U.S.C. §§ 5109A, 7111; *Cook*, *supra*. The Chairman of the Board may grant reconsideration of a Board decision, *see* 38 U.S.C. § 7103(a); *Wachter v. Brown*, 7 Vet.App. 396, 397 (1995), and the Board may, regardless of any motion for reconsideration, sua sponte correct obvious errors, *see* 38 U.S.C. § 7103(c); *Smith (William)*, *supra*; *Hazan*, 10 Vet.App. at 522. Additionally, a claim that has been denied or not granted in full can be reopened based on new and material evidence, which will result in a new decision on the matter. *See* 38 U.S.C. §§ 5108, 7104; *Cook*, *supra*; *Jackson v. Nicholson*, 19 Vet.App. 207, 210 (2005).

Closely associated with the exceptions to finality is the unadjudicated claim, or, otherwise stated, a claim for which a decision has never been rendered or become final. This occurs when "the time for appealing either an RO or a Board decision did not run where the [Secretary] failed to provide the veteran with information or material critical to the appellate process." *Cook*, 318 F.3d at 1340 (discussing *Tablazon*, *Hauck*, *Kuo*, and *Ashley*, all *infra*). In *Cook*, the Federal Circuit observed that this Court has tolled the period of time for a claimant to act after an RO decision, leaving the case in a nonfinal status when the Secretary has failed to (1) notify a claimant of the denial of a claim, *see Hauck v. Brown*, 6 Vet.App. 518, 519 (1994), (2) mail a claimant a copy of the Board decision pursuant to 38 U.S.C.§ 7104(e), *see Ashley v. Derwinski*, 2 Vet.App. 307, 311 (1992), (3) provide notice to the claimant of appellate rights, *see In re Fee Agreement of Cox*, 10 Vet.App. 361, 375 (1997), *vacated on other grounds*, 149 F.3d 1360 (Fed. Cir. 1998), or (4) issue the claimant a Statement of the Case, *see Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995); *Kuo v. Derwinski*, 2 Vet.App. 662, 666 (1992). *See also Andrews v. Nicholson*, 421 F.3d 1278, 1284 (Fed. Cir. 2005) ("when the VA violates *Roberson* [*v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001),] by failing to construe the veteran's pleadings to raise a claim, such claim is not considered unadjudicated but the error is instead properly corrected through a CUE motion").

It should also be noted that a claim may remain in an unadjudicated state due to the failure of the Secretary to process it. In such instances, the appropriate procedure for a claimant to press a claim believed to be unadjudicated (and for which there is no final decision that arguably failed

to consider the claim) is to pursue a resolution of the original claim, e.g., seek issuance of a final RO decision with proper notification of appellate rights and initiate an NOD. *See* 38 U.S.C. §§ 5104, 7105. If the Secretary fails to process the claim, then the claimant can file a petition with this Court challenging the Secretary's refusal to act. *See Costanza v. West*, 12 Vet.App. 133, 134 (1999).

However, none of the above scenarios results in a freestanding "finality claim." Although Ms. DiCarlo's counsel asserted at oral argument that Ms. DiCarlo is making a "finality claim" rather than a claim for revision based on CUE, the Court cannot endorse the existence of such a creature. *See also* Appellant's Brief at 12 (arguing that the notice provisions of 38 U.S.C. § 5103 apply because she is not making a claim for revision based on CUE). There is no section in title 38 that creates a procedure for making a freestanding challenge to the finality of a prior decision. Accordingly, an attack on a final decision must be raised through a valid procedure.

Furthermore, the conclusion that a prior decision is final is not a conclusion that the prior decision is correct, which can be rebutted by a showing of error in the prior decision. Although a final decision enjoys a presumption of correctness, finality and correctness are different concepts. *See Bingham v. Nicholson*, 421 F.3d 1346, 1349 (Fed. Cir. 2005) ("Even if [a] decision to deny a claim [is] based on an incomplete or erroneous analysis of law or fact . . . , while unfortunate, it still would be an adjudication of that claim to which the rule of finality attaches."); *Fugo v. Brown*, 6 Vet.App. 40, 43-44 (1993) (explaining that the mere existence of error is not a sufficient basis for altering a final decision). Finality is merely a measure of procedural maturity. It distinguishes processes that have been completed from those that have not. *Cf. Cook*, 318 F.3d at 1339 ("The purpose of the rule of finality is to preclude repetitive and belated readjudication of veterans' benefits claims.").

### C. Application of Res Judicata and Finality

In this case, the 1983 Board decision constitutes a final decision on the issue of the proper effective date for the award of Ms. DiCarlo's service-connected psychiatric condition, a claim that was first advanced in 1973. The 1983 decision also determined that a 1981 Board decision had concluded correctly that the 1973 RO decision "was final and subject to revision only by the filing of a reopened claim." R. at 211. Thus, the 1983 Board decision is binding and readjudication of that

7

same issue is precluded, except through one of the prescribed means.  *See* 38 U.S.C. §§ 5108, 5109A, 7103, 7104, 7111; *Andrews*, *Cook*, *Jackson*, *Hazan*, and *Wachter*, all *supra*.

The 2002 Board, however, directly addressed the finality of the 1973 RO decision without considering whether the issue had been properly presented.  The Board in 2002 conducted its review outside the context of CUE in the 1983 Board decision, outside the reopening of the claim, outside a reconsideration by the Board Chairman, outside an exercise by the Board of its authority to sua sponte correct an obvious error in the record, and outside any claim that the 1983 Board decision itself remained in an unadjudicated status.[3]  A final Board decision can only be revisited if one of the statutory exceptions to finality is satisfied, and, in this instance, the 1983 Board decision contains the only valid determination on the issue of the finality of the 1973 decision.  *See Cook,* 318 F.3d at 1337; *see also Hazan*, 10 Vet.App. at 520-22; *Strott*, *supra*.  Accordingly, the 2002 Board erred in addressing the issue and its determination on that issue must and will be set aside.  *See* 38 U.S.C. §§ 7103, 7104, 7111; *Cook*, *supra*; *Routen*, 142 F.3d at 1437-38; *Hazan* and *Strott*, both *supra*.

In light of our disposition in this matter, Ms. DiCarlo's argument that the VCAA applies to the issue of finality in an RO decision is moot, and the Court will not address that argument.  *See Dunn v. West*, 11 Vet.App. 462, 467 (1998) (where issue becomes moot, Court is divested of jurisdiction to consider it).  Without expressing any opinion on the merits of such action, we simply note that Ms. DiCarlo remains free to request a revision on the basis of CUE in the 1983 Board decision that determined the 1973 RO decision was final or to bring any other appropriate action upon her underlying claim.  *See Andrews*, *supra*.

### III.  CONCLUSION

The 2002 Board erred when it reviewed the finality of the 1973 RO decision outside of the context of a statutory exception to finality because the 1983 Board decision was a final decision on the issue of the proper effective date for the award of Ms. DiCarlo's service-connected psychiatric condition.  Accordingly, that part of the 2002 Board decision that found the 1973 RO decision to be final is SET ASIDE, and the appeal is DISMISSED.

---

[3]  The Court notes that a Board's correction of obvious error pursuant to 38 U.S.C. § 7103(c) would have necessitated a correction in the 1983 Board decision rather than a review of the 1973 RO decision.