**Jesse F. ARCHER, Appellant,**

v.

**Anthony J. PRINCIPI, Acting Secretary of Veterans Affairs, Appellee.**

**No. 90–1534.**

United States Court of Veterans Appeals.

Nov. 5, 1992.

Denny Hyslip, Fayetteville, Ark., was on the brief, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, Washington, D.C., were on the pleadings, for appellee.

Before FARLEY, MANKIN and HOLDAWAY, Associate Judges.

FARLEY, Associate Judge:

Appellant Jesse F. Archer appeals an August 27, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to (1) an increased rating for the residuals of a gunshot wound (GSW), fracture of the right femur with shortening of the right leg, rated as 20% disabling from November 20, 1986; (2) an earlier effective date than November 20, 1986, for the separate evaluation for residuals of a GSW, fracture of the right femur with shortening of the right leg; and (3) application of the bilateral factor. We find that the BVA applied the proper statutory and regulatory standards in its decision and that the findings of fact made by the Board are plausible. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). Accordingly, the BVA decision of August 27, 1990, is affirmed.

### I.

On June 19, 1968, appellant, while serving as a helicopter pilot, sustained multiple gunshot wounds, including one to his right

thigh which resulted in an open fracture of the right femur. Subsequent x-ray studies documented a "badly comminuted fracture of the upper femur." R. at 117. The report of the Physical Evaluation Board, which convened three months after appellant was injured, noted that the "fracture fragments [were] generally in good position and alignment." R. at 164. Appellant retired due to disability on December 20, 1968. R. at 187a. On February 6, 1969, appellant received a convalescent disability rating of 100%. R. at 190. Subsequently, on September 5, 1969, appellant underwent a physical examination by the Veterans' Administration (now Department of Veterans Affairs) (VA), R. at 191–201, which resulted in a November 4, 1969, rating decision awarding a combined rating of 80%. R. at 202–03. This rating included a 30% evaluation under diagnostic code 5313, 38 C.F.R. § 4.73, for "GSW, POSTERIOR THIGH, RT. W/COMPOUND FRACTURE." R. at 202.

The report of the Physical Evaluation Board proceedings of November 18, 1971, described appellant's disability, in part, under diagnostic code 5255, 38 C.F.R. § 4.71a, as "[f]emur, malunion of, right, with moderate hip disability, 1½ inches shortening of limb and muscle injuries to Groups XIV and XVII...." R. at 226. The narrative summary indicated that appellant "continues to use a 1 inch heel and sole elevation on the right shoe for associated 1½ inch femoral shortening. Proximal femoral fracture on the right has healed with coxa vera of 115 degrees and there is 1½ inches of shortening." R. at 230.

In a decision dated July 28, 1978, the VA rating board found that there had been a clear and unmistakable error in the November 4, 1969, rating due to the failure to take appellant's abdominal wound into account. R. at 214. As a result, appellant was assigned a combined rating of 90% retroactive to September 5, 1969. R. at 215. In addition, although the 30% rating for GSW, right thigh, with fracture, femur, remained the same, there was a change in the diagnostic code: in place of the single code, 5313, which had been used previously, R. at 202, two codes separated by a hy-

phen, "5313–5255," were used to describe the disability. R. at 214.

Appellant subsequently filed a claim for an increased disability rating based upon loss of use of his right foot. The resulting 1980 VA examination revealed

an old, well-healed fracture in the proximal femur on the right side.... That fracture is well-healed, but it has healed in a moderate varus deformity. This is the cause of his one-inch of shortening of the right lower extremity.... This is compensated for by a one-inch heel-lift on the right side, which appears to be adequate.

R. at 261. Appellant's claim was denied in a rating decision dated August 22, 1980. R. at 267.

On November 20, 1986, appellant reopened his claim, seeking increased compensation for loss of use of paired extremities. R. at 292. A VA surgical examination dated May 28, 1987, documented a 4 cm shortening of the right leg, R. at 322, but did not find loss of use of the right leg. The claim for an increase due to loss of paired extremities was denied in a rating decision dated June 30, 1987. R. at 325. Appellant filed an appeal and, in a decision dated November 7, 1988, the BVA affirmed the denials of appellant's claims for special monthly compensation based on loss of use of the right foot and for additional compensation for loss of use of a paired extremity; however, the BVA did grant entitlement to an increased rating from 30% to 40% under diagnostic code "5313–5255," with an effective date of November 20, 1986, for the residuals of the GSW to the right thigh. R. at 371–78. This change did not increase the combined rating of 90%. R. at 379.

When appellant questioned whether the increased rating included consideration of the fractured femur, another surgical examination was conducted on January 24, 1989. R. at 385–86. The examiner reported a 3.5 cm shortening of the right leg and

significant discomfort on external rotation of the hip with significant limitation of external rotation (approximately 30%). Similar findings are identified on internal

rotation. The discomfort is identified as less severe but the limitation is approximately 40%.

R. at 386. Based upon this examination, appellant was awarded a separate rating of 20% under diagnostic code 5255 for "residuals, fracture of right femur with shortening of the right leg." R. at 389. This rating was in addition to the retained 40% rating under diagnostic code 5313 for "Residuals, gunshot wound, right thigh." *Id.*

Appellant filed a Notice of Disagreement dated April 27, 1989, in which he claimed entitlement to a rating of 30% under diagnostic code 5255 and to an effective date for the rating of December 21, 1968, rather than November 20, 1986, the date his reopened claim was received by the VA. R. at 393. In addition, appellant sought application of "the [b]ilateral [f]actor." *Id.* The BVA denied appellant's claims in a decision dated August 27, 1990. A timely Notice of Appeal was filed on December 13, 1990.

Appellant filed a brief on July 17, 1991. On November 22, 1991, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of all proceedings until the motion is resolved. Appellant did not file a response. The Court will grant the Secretary's motion for acceptance of the motion in lieu of a brief.

## II.

In its August 27, 1990, decision, the BVA dealt first with two other issues that appellant had raised in the interim: entitlement to an earlier effective date for the 40% rating under diagnostic code 5313 and entitlement to special monthly compensation for paired extremities. The Board found that these two issues were not developed for appellate consideration and referred them to the originating agency for appropriate action. *Archer,* BVA ___, at 2. Since these issues were not considered by the Board, they will not be considered by this Court. *See Mokal v. Derwinski,* 1 Vet.App. 12 (1990); *Branham v. Derwinski,* 1 Vet.App. 93 (1990).

We turn now to the three issues determined by the BVA and raised by appellant in this appeal.

### A.

In denying appellant's claim to an increased rating due to "the bilateral factor," the BVA determined that the bilateral factor had been properly applied to appellant's claims. *Archer,* BVA ___, at 8. In his brief, appellant indicated that the issue had been raised due to a misunderstanding and "concedes that the [Board] correctly interpreted the bilateral factor.... This issue, it is suggested, is therefore moot." Br. of Appellant at 5. In view of appellant's concession, which is to be commended, the Court agrees that the issue is moot.

### B.

With respect to appellant's claim for an increased rating for residuals of the GSW to the right thigh, the BVA determined that:

> radiographic studies show a well-healed fracture with mild varus deformity. There is a significant loss of internal and external rotation of the right hip, but not of flexion or extension. There is also an approximately 3.5–centimeter shortening of the extremity for which a separate rating cannot be assigned according to accepted rating practice. Although no significant malunion of the fracture site has been shown, the fracture residuals may be rated analogous to [diagnostic] [c]ode 5255. In this panel's opinion, manifestations of the femur fracture do no[t] result in more than moderate disability.

*Archer,* BVA ___, at 7. The Board concluded a rating in excess of 20% was not warranted.

A determination regarding level of disability is a finding of fact that the Court must affirm unless that determination is found to be "clearly erroneous." 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)); *see Lovelace v. Derwinski,* 1 Vet.App. 73 (1990). "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is

a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

██ The BVA's conclusion that the residuals of appellant's GSW to the right thigh, the fractured femur, do not result in more than a moderate disability is supported by the evidence of record. Appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal of this determination. *See Gilbert,* 1 Vet.App. at 49; *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed. Cir.1990). Accordingly, the decision of the Board on this issue will be affirmed.

### C.

██ Appellant claims entitlement to an earlier effective date for the rating under diagnostic code 5313 on the ground that the VA committed a clear and unmistakable error in failing to grant a separate compensable rating for residuals of a GSW, fracture of the right femur with shortening of the right leg, from 1968. Pursuant to 38 C.F.R. § 3.105(a) (1991), a previous determination must be reversed or amended if it was the product of a "clear and unmistakable error." *See Russell v. Principi,* 3 Vet.App. 310 (1992). In *Russell,* this Court upheld as a valid regulation 38 C.F.R. § 3.105(a), and ruled that we have jurisdiction to review BVA decisions on claims that clear and unmistakable error had been committed in previous ratings determinations. *Id.,* 3 Vet.App. at 312. We also held in *Russell* that the scope of our review of such decisions is necessarily limited by our jurisdictional statutes. *Id.,* at 314–15. We cannot conduct a plenary review of the merits of the original decision; rather, we are limited to determining whether the BVA's subsequent decision which has considered possible clear and unmistakable error in previous adjudications, the one on appeal before us, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C.

§ 7261(a)(3)(A) (formerly § 4061(a)(3)(A)); *Russell,* at 314–15.

██ The BVA found that there was no "clear and unmistakable error" under 38 C.F.R. § 3.105(a) in any of the previous rating decisions; it rested its decision on two distinct grounds, determining that:

[1] neither on the basis of malunion or nonunion of the fracture [2] nor on the basis of functional impairment of the hip was entitlement to a compensable rating specifically for the femur fracture alone demonstrated by the medical record.

*Archer,* BVA ——, at 7. We will examine each in detail.

With respect to the first ground, the malunion or nonunion of the fracture itself, the Board gave its reasons or bases as follows:

[T]he contention that there was malunion or, for that matter, nonunion of the fracture site is not supported by the radiographic studies themselves. Moreover, prior to the VA examination of January 1989, apart from slight loss of abduction, no demonstrable function nor impairment of the right hip was clinically shown and, with respect to the loss of abduction, this was not of such extent or severity as to warrant a compensable rating based on limitation of motion of the thigh; nor did the slight abduction loss result in any significant impairment of overall hip function.

\*      \*      \*      \*      \*      \*

As to the assignment of the effective date of November 20, 1986, this was the date in [sic] which increased compensation was initially claimed, and prior to the date on which functional impairment of the hip to a compensable degree was first clinically documented in the record. The applicable law does not provide for entitlement to an earlier effective date than the date of claim, under these circumstances.

*Archer,* BVA ——, at 6–7.

With respect to the second ground, the lack of demonstrated distinct and compensable functional impairment, the Board explained that appellant's hip impairment had

been taken into account in the prior ratings: "The schedular criteria under which the gunshot wound to the right hip had previously been rated had provided compensation for impairment, including loss of extension of the hip." *Id.* The veteran's right leg disability had been given a single rating under two distinct but hyphenated diagnostic codes: "5313–5255." *See* R. at 190, 214, 218, 378. The role of hyphenated diagnostic codes is explained in paragraph 49.18(c)(2) of the VA's ADJUDICATION PROCEDURE MANUAL, M21–1: "When a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned, the additional code will be shown after a hyphen." The diagnostic codes at issue provide as follows:

**Diagnostic Code 5255: "The Hip and Thigh"**

5255 Femur, impairment of:
    Fracture of shaft or anatomical neck of:
        With nonunion, with loose motion spiral of oblique fracture) ...................... 80
        With nonunion, without loose motion, weightbearing preserved with aid of brace .. 60
    Fracture of surgical neck of, with false joint..................... 60
    Malunion of:
        With marked knee or hip disability ................... 30
        With moderate knee or hip disability .................... 20
        With slight knee or hip disability....................... 10

38 C.F.R. § 4.71a (1991).

**Diagnostic Code 5313: "The Pelvic Girdle and Thigh"**

5313 Group XIII. Posterior thigh group. Hamstring complex of 2-joint muscles. (1) Biceps femoris; (2) semimembranosus; (3) semitendinosus. (Function: Extension of hip and flexion of knee. Outward and inward rotation of flexed knee. Acting with rectus femoris and sartorius ... synchronizing simultaneous flexion of hip and knee and extension of hip and knee by belt-over-pulley action at knee joint.)
        Severe ..................... 40
        Moderately severe ........... 30

38 C.F.R. § 4.73 (1991).

The first of the hyphenated diagnostic codes, 5313, indicates that the system being rated was the "Foot and Leg" and the functional loss involved muscle Group XIII. There is no pre-designated code for rating a "Foot and Leg" disability which results from damage to the femur. Therefore, the rating board, following 38 C.F.R. § 4.20 (1991), provided an additional analogous rating—the "-5255" designation—to indicate the most closely analogous injury. Thus, appellant was awarded a disability rating of 30% under diagnostic code 5313–5255 for loss of functional use of his foot and leg (5255) due to muscle and femur damage and hip disability (5313). After appellant claimed that the damage to the femur caused hip damage as well as foot and leg disability and an examination was performed, it was determined that there was hip disability which warranted a separate rating. Diagnostic code 5255, which originally served as a useful analogy to describe functional use of the foot and leg, was found to be descriptive of an additional, distinct and newly demonstrated disability, and a separate award was made.

The Board also explained in detail the reason why "a separate rating cannot be assigned" for the shortening of appellant's right leg which is variously reported as 1½ inches, 4 cm and 3.5 cm. *Archer,* BVA ——, at 7. The Note following diagnostic code 5275 mandates that ratings for shortening are "[n]ot to be combined with other ratings for fracture or faulty union in the same extremity." *See* 38 C.F.R. § 4.71(a) (1991). Such an "accepted rating practice," *Archer,* BVA ——, at 7, is consistent with 38 C.F.R. § 4.40 (1991), which provides that disability ratings of the musculoskeletal system are to be based on the functional loss of a particular part of the system which "may be due to absence of part, or all, of the necessary bones, joints and muscles...." *See also* 38 C.F.R. § 4.14 (1991) ("The evaluation of the same disability under various diagnoses is to be avoided.").

The Board concluded:

In this panel's opinion, the failure to assign a separate compensable rating specifically for the residuals of the fracture ... was based on a reasonable interpre-

tation of the medical record and did not represent error.

*Archer*, BVA ___, at 6.

Accordingly, as to appellant's claim for entitlement to an earlier effective date for the rating under diagnostic code 5313 on the ground that the VA committed clear and unmistakable error, we are unable to conclude that the Board's determination, which is supported by the evidence of record, controlling statutes and applicable regulations, was "arbitrary, capricious, an abuse or discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A) (formerly § 4061(a)(3)(A)).

### III.

Upon consideration of the foregoing, the BVA decision of August 27, 1990, is AFFIRMED.