# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-5125

PAT A. HATFIELD, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 13, 2022                    Decided March 28, 2023)

*Adam R. Luck*, of Dallas, Texas, for the appellant.

*Mark J. Hamel*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, MEREDITH, and FALVEY, *Judges*.

ALLEN, *Judge*: Appellant Pat A. Hatfield is the surviving spouse of veteran Archie A. Hatfield, who served the Nation honorably in the United States Army during World War II, from March 1944 to May 1945.[1] The veteran died in January 1979, and Mrs. Hatfield sought VA compensation for his death under 38 U.S.C. § 351, now codified as section 1151. She has asserted that the medical treatment VA provided to the veteran was deficient, specifically because VA failed to obtain his informed consent concerning cancer treatment.[2] Appellant was finally awarded benefits in March 2021, following our March 2021 precedential decision on her earlier appeal in *Hatfield I*. In *Hatfield I*, we held that the reasonable person exception to informed consent–which allows defects in informed consent that are minor and immaterial if a reasonable person in similar circumstances would have proceeded with treatment even if informed of a foreseeable risk–does not apply when *no* consent is obtained at all.[3]

---

[1] Record (R.) at 173. The record of proceedings in this matter does not include the veteran's DD Form 214, but that document was before the Court in the docket for a prior Court decision involving Mrs. Hatfield. *See Hatfield v. McDonough* (*Hatfield I*), 33 Vet.App. 327, 328 (2021).

[2] *See* R. at 394.

[3] *Hatfield I*, 33 Vet.App. at 329.

This appeal, which is timely and, subject to the caveats we discuss below, over which the Court has jurisdiction,[4] concerns whether appellant could be entitled to a much earlier effective date for her award of compensation under section 1151. Appellant challenges a June 4, 2021, decision of the Board of Veterans' Appeals that denied a motion to revise, on the basis of clear and unmistakable error (CUE), an October 29, 1980, Board decision that, in turn, had denied entitlement to compensation under the predecessor to section 1151, 38 U.S.C. § 351. As we will discuss in more detail below, appellant argues that the 1980 Board decision contains CUE because it did not address whether VA's failure to obtain the veteran's informed consent before his radiation treatment for cancer constituted deficient medical care under section 351.[5]

This matter was referred to a panel of the Court principally to consider whether, at the time of the October 1980 Board decision, a failure to obtain a patient's informed consent provided a basis upon which to award compensation under section 351 such that it was CUE for the 1980 Board not to consider that question. We hold that a failure to obtain a patient's informed consent was not undebatably a basis upon which to award compensation under section 351 in 1980. Appellant has not shown that the only reasonable interpretation of section 351 in 1980 was that benefits were warranted based on a failure to obtain a patient's informed consent.[6] In a nutshell, the language of the statute then–as today–does not contain any reference to informed consent, and the legislative history of the statute reinforces the conclusion that the failure to obtain a patient's informed consent did not support compensation under the provision. Moreover, the regulation implementing section 351 underscores the point that a lack of informed consent did not undebatably provide a basis for compensation. Indeed, the concept of informed consent forming a basis upon which compensation was warranted does not appear in relevant regulations until the mid-1990s. Finally, we are not persuaded by appellant's argument that the common law of medical malpractice supports a finding that the only reasonable interpretation of section 351 in 1980 was that the statute provided for an award of compensation where VA did not obtain a patient's informed consent. The bottom line is that appellant fails to show that the Board's June 2021

---

[4] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[5] Appellant's Brief (Br.) at 7.

[6] *See Berger v. Brown*, 10 Vet.App. 166, 170 (1997) ("If the RO's interpretation of the plain meaning of the law was clearly and unmistakably erroneous . . . then there may be a basis for a CUE [motion]. On the other hand, if it was a plausible interpretation . . . then there is no basis for such a claim."); *see also Perciavalle v. McDonough*, 35 Vet.App. 11, 37 (2021) (en banc).

decision finding no CUE in the October 1980 Board decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, we will affirm.

## I. FACTS AND PROCEDURAL HISTORY

In *Hatfield I* we described many of the facts relevant to this appeal.[7] Here, we provide only the context necessary to understand the resolution of the matter before the Court today.

In 1978, several decades after his World War II service, the veteran was diagnosed with stage 2B Hodgkin's disease at a VA facility.[8] Following that diagnosis, the veteran received radiation therapy at a VA medical center.[9] Sadly, Mr. Hatfield died in January 1979 from pulmonary complications associated with the radiation therapy he received as treatment for his condition.[10] That same month, appellant, Mrs. Hatfield, sought VA dependency and indemnity compensation (DIC) benefits for the veteran's cause of death.[11] In a February 1979 decision, the regional office (RO) denied service connection for the cause of the veteran's death, finding "no evidence the service-connected conditions contributed to cause of death, interfered with proper treatment, or in any way hastened death."[12]

Appellant perfected an appeal of the RO decision to the Board, leading to the October 1980 Board decision that appellant contends contains CUE.[13] In that decision, and as relevant here, the Board rejected appellant's argument that the VA facility administered an excessively high dose of radiation to the veteran.[14] The Board concluded that the VA facility acted appropriately in treating the veteran, and that while his reaction to radiation was unusual, "we are unable to say that such a reaction was not a contemplated possible result."[15] Therefore, the Board denied entitlement to

---

[7] *See Hatfield I*, 33 Vet.App. at 329-31.

[8] R. at 1794-96.

[9] *Id.*

[10] R. at 1816.

[11] R. at 1808-11.

[12] R. at 1786.

[13] R. at 1657-72.

[14] R. at 1658.

[15] R. at 1670.

compensation under section 351 for the cause of the veteran's death. It is this 42-year-old decision that is the subject of the appeal before the Court today.

There was no right to seek judicial review of a Board decision in 1980, so the October 1980 decision was final. Nevertheless, over the years, appellant used several procedural devices to continue to assert her entitlement to VA benefits under section 1151, the successor statute to section 351, culminating in our March 2021 *Hatfield I* decision.[16] In *Hatfield I*, the Court held that a complete failure to seek a patient's informed consent for a medical procedure could not be excused as a "minor and immaterial deviation" from the informed-consent requirement.[17] Therefore, we held that the Court's decision in *McNair* adopting this exception did not apply when there was no attempt to obtain informed consent at all.[18] The Court reversed the Board's denial of DIC benefits and remanded appellant's claim for the Board to award DIC benefits and assign an effective date.[19] In *Hatfield I*, the Court discussed the October 1980 Board decision, noting that the 1980 Board addressed the issue of foreseeability and found that pulmonary fibrosis was not unforeseen.[20] The Court held that because the 1980 Board addressed the issue, the claim did not remain pending as appellant had argued. In a footnote, the Court noted that "nothing precludes appellant from filing a [CUE] motion to revise the 1980 Board decision."[21]

The record reflects, however, that in September 2020, before the Court issued its decision in *Hatfield I*, appellant, through her current counsel, had filed just such a CUE motion concerning the 1980 Board decision.[22] She described her CUE allegation as follows:

> [T]he Board's decision dated October 29, 1980, which denied entitlement to compensation under 38 U.S.C. § 351 (later codified as 38 U.S.C. § 1151), was based on an incorrect application of the provisions of 38 U.S.C. § 351, 38 U.S.C. § 4131 (1976)[,] and 38 C.F.R. § 17.34 (1980), which rendered it void ab initio.[23]

---

[16] R. at 173-90. The Background section of *Hatfield I* contains a detailed retelling of the full procedural history of Mrs. Hatfield's journey to DIC benefits. *See Hatfield I*, 33 Vet.App. at 329-31.

[17] 33 Vet.App. at 329, 337-38 (discussing *McNair v. Shinseki*, 25 Vet.App. 98, 107 (2011)).

[18] *Hatfield I*, 33 Vet.App. at 338.

[19] *Id.* at 341.

[20] *Id.* at 340-41.

[21] *Id.* at 341 n.95.

[22] R. at 195-201.

[23] R. at 195-96.

4

She specifically argued that there was CUE in the 1980 decision because the Board did not address whether VA medical professionals had obtained the veteran's informed consent before he received radiation treatment for his cancer.[24] In that regard, she noted that there was no evidence that VA had sought or obtained the veteran's informed consent at the time of the 1980 Board decision, so there was a factual basis to support her claim. She argued that 38 U.S.C. § 4131 and 38 C.F.R. § 17.34, which required VA medical professionals to obtain a patient's informed consent for medical care, should have been considered in conjunction with section 351's compensation benefit. She contended that if the Board had considered these three provisions, VA would have granted her DIC benefits at that time under the undisputed facts.

In the June 2021 decision on appeal, the Board denied appellant's CUE motion, concluding that nothing in the law in 1980 provided that a failure to obtain a patient's informed consent was a basis for compensation under section 351.[25] In that regard, the Board found that although section 4131 and § 17.34 mandated that VA health care providers obtain a patient's informed consent, appellant failed to demonstrate that those provisions had any impact on the provision of compensation under section 351.[26] Additionally, the Board highlighted that section 351 did not contain "any reference to the need for informed consent" at the time of the 1980 Board decision.[27] Instead, the Board noted that the statute and regulation had "substantially changed" since 1980, and the Board determined that a failure to obtain informed consent only became a ground upon which to award compensation under the successor to section 351 (section 1151) when VA adopted the current statute's implementing regulation, 38 C.F.R. § 3.361, well after 1980.[28] In 1980, by contrast, section 351's implementing regulation, 38 C.F.R. § 3.358, did not mention informed consent as a basis for compensation or refer to section 4131 or § 17.34, which dealt with informed consent as a matter of medical practice.[29] In sum, the Board concluded that the law in 1980 "regarding compensation for additional disability or death due to VA medical care made no

---

[24] R. at 198.

[25] R. at 6.

[26] R. at 9.

[27] R. at 10.

[28] *Id.*

[29] R. at 11.

reference to [section 4131 or § 17.34 governing informed consent]" and that those provisions "contain no authorization for the payment of compensation for violations of the informed consent practices they reference."[30] Therefore, the Board found that the law as it stood at the time of the 1980 Board decision did not require consideration of a failure to obtain a patient's informed consent in the context of a claim for compensation under section 351, and that the Board's failure in 1980 to consider the matter did not constitute CUE.[31]

## II. PARTIES' ARGUMENTS

Appellant argues that the law as it was understood at the time of the 1980 Board decision equated a lack of informed consent with negligence and, therefore, the failure to obtain such informed consent provided a basis for an award of compensation under section 351.[32] Because of this, appellant maintains that the 1980 Board's failure to consider the lack of informed consent for the veteran's radiation treatment constitutes CUE.[33] She contends that the June 2021 Board conceded that section 4131 and § 17.34, governing informed consent, were in effect in 1980.[34] She also asserts that the 2021 Board's sole reason for denying her CUE motion was that the law "'substantially changed'" following the 1980 Board decision,[35] despite the fact that section 1151 today reads nearly the same as section 351 did in 1980.[36] She argues that the Board's reliance on a change in regulatory language is of no moment because the current implementing regulation, § 3.361, provides a lack of informed consent as an example of negligence and not as a requirement for section 1151 compensation.[37] Appellant contends that, because negligence formed a basis for compensation under section 351 in 1980, it necessarily included a failure to obtain informed consent as a basis for such compensation. And she points to the common law more generally at

---

[30] *Id.*

[31] R. at 10-11.

[32] Appellant's Br. at 12.

[33] *Id.*

[34] *Id.* at 6.

[35] *Id.* at 7 (quoting R. at 10).

[36] *Compare* 38 U.S.C. § 351 (1976 & Supp. III 1980), *with* 38 U.S.C. § 1151 (2018 & Supp. III 2022).

[37] Appellant's Br. at 8-9.

the time of the 1980 Board decision to demonstrate that informed consent was a recognized form of negligence.[38]

The Secretary responds that the 2021 Board decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and that appellant's arguments do not meet the stringent standard governing CUE motions.[39] The Secretary argues that it was not arbitrary or capricious for the Board to rely on the changes made to section 1151's implementing regulation after 1980 to illustrate that the law at the time of the 1980 Board decision did not include a failure to obtain a patient's informed consent as a basis for compensation.[40] This is so, the Secretary argues, because the informed-consent language was explicitly added to the regulatory language long after the 1980 Board decision.[41] The Secretary asserts that it was this later-adopted regulatory language that made a lack of informed consent, as provided for VA purposes under section 4131 and § 17.34, a basis for compensation under section 1151.[42] Finally, the Secretary contends that appellant's reliance on the role of informed consent in establishing negligence in the common law more generally misses the mark because the correct inquiry to establish CUE is whether that concept was embodied in VA's statutes and regulations at the time of the 1980 Board decision.[43]

### III. ANALYSIS

Here is a roadmap to our resolution of this appeal. We begin by discussing the law governing CUE that will shape our analysis. We also provide background on section 1151 compensation to set the stage for our consideration of the Board's resolution of appellant's CUE motion. Then, we explain the theories of CUE over which we conclude we have jurisdiction and delineate certain theories of CUE that, if appellant were pressing them, we would not have jurisdiction to address. We then turn to section 351 as it existed at the time of the 1980 Board decision, including what its implementing regulation then and in subsequent iterations tells us about the meaning of the statute. Along the way, we also consider the relationship between section

---

[38] *Id.* at 10-11.

[39] Secretary's Br. at 14.

[40] *Id.* at 11-13.

[41] *Id.*

[42] *Id.*

[43] *Id.* at 13-14.

351 and section 4131 and § 17.34, the statute and regulation requiring VA to obtain a patient's informed consent as a matter of medical practice in 1980, and whether those provisions support the relief appellant seeks. We ultimately conclude that the Board's conclusion that the October 1980 Board decision did not contain CUE is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, leading us to affirm the June 2021 decision on appeal.

*A. Legal Landscape: CUE and Section 351/1151 Compensation*

The finality of an unappealed Board decision may be overcome if the decision contains CUE.[44] Here, appellant does not dispute that the 1980 Board decision was final and, therefore, that one path to revisit that decision is through a showing of CUE.[45]

CUE "is a very specific and rare kind of error . . . that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error."[46] To establish CUE, a claimant must show that (1) either the facts known at the time were not before the adjudicator or the law then in effect was incorrectly applied, (2) an error occurred based on the record and the law that existed at the time the decision was made, and (3) had the error not been made, the outcome would have been manifestly different.[47] When reviewing a Board conclusion that there was no CUE in a final VA decision, "the Court cannot conduct a plenary review of the merits of the original decision."[48] Rather, the Court's overall review of the Board finding no CUE in a prior, final decision is limited to determining whether the Board's finding was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[49]

Here, appellant's CUE allegations involve the application of the law in effect at the time of the 1980 Board decision governing compensation based on disability caused by deficient VA medical care. By way of background, section 1151 now, as section 351 did in 1980, provides

---

[44] 38 U.S.C. § 7111(a); *see DiCarlo v. Nicholson*, 20 Vet.App. 52, 56 (2006), *aff'd sub nom. DiCarlo v. Peake*, 280 F. App'x 988 (Fed. Cir. 2008).

[45] As the Court noted in *DiCarlo*, other exceptions to finality include the Chairman of the Board granting reconsideration of a Board decision or a claimant reopening a previously denied claim. *DiCarlo*, 20 Vet.App. at 56.

[46] 38 C.F.R. § 20.1403(a) (2022); *see George v. McDonough*, 142 S. Ct. 1953, 1959-60 (2022).

[47] *Simmons v. Wilkie*, 30 Vet.App. 267, 274 (2018), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020); *Damrel v. Brown*, 6 Vet.App. 242, 245 (1994); *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc).

[48] *Simmons*, 30 Vet.App. at 274 (internal quotation marks omitted); *see Archer v. Principi*, 3 Vet.App. 433, 437 (1992).

[49] 38 U.S.C. § 7261(a)(3)(A); *see Simmons*, 30 Vet.App. at 274-75.

compensation for additional disability or death caused by VA hospitalization, medical or surgical treatment, or rehabilitation services as if that disability were service connected. In 1980, section 351 read as follows:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of this title, awarded under any of the laws administered by the Veterans' Administration, or as a result of having submitted to an examination under any such law, and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.[50]

As we will discuss in more detail below, the language of section 351 in 1980 remained the state of play until the Supreme Court's 1994 decision in *Brown v. Gardner*, which held that because the statute did not contain a fault requirement, VA's implementing regulation that included such a requirement was invalid.[51] In response to that decision, Congress amended the statute to add the fault requirement that the Supreme Court found was missing. Therefore, today the successor to section 351, section 1151, requires an additional disability that is not the result of willful misconduct and caused by hospital, medical or surgical treatment furnished by VA or at a VA facility, just as section 351 did in 1980.[52] But section 1151 also includes one more element: the "proximate cause" of the disability must either be "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part" of VA or "an event not reasonably foreseeable."[53] The key point is that section 351 in 1980 required an additional disability that was not the result of willful misconduct and caused by treatment at a VA facility, just as section 1151 does today.[54]

---

[50] 38 U.S.C. § 351 (1976 & Supp. III 1980).

[51] 513 U.S. 115, 116 (1994) (*Gardner II*).

[52] *Compare* 38 U.S.C. § 1151(a) (2018 & Supp. III 2022), *with* 38 U.S.C. § 351(a) (1976 & Supp. III 1980).

[53] 38 U.S.C. § 1151(a)(1)(A)-(B).

[54] 38 U.S.C. § 351 (1976).

Having set out these principles, we are almost ready to address appellant's arguments about the Board's decision on appeal on the merits. But before we can do so, we must spend a moment on our jurisdiction. We turn to that matter next.

### B. The Court's Jurisdiction over Appellant's CUE Motion

The Court has made clear that "each 'specific' assertion of CUE constitutes a [matter] that must be the subject of a decision by the [Board] before [this] Court can exercise jurisdiction over it."[55] When the Court reviews a Board decision regarding CUE, "[t]he necessary jurisdictional 'hook' for this Court to act is a decision of the [Board] on the specific issue of [CUE]."[56] Therefore, we begin our analysis by establishing what CUE allegations we have the jurisdiction to address.

As described above, in her September 2020 CUE motion, appellant specifically argued that the 1980 Board decision contained CUE because it failed to discuss whether VA obtained the veteran's informed consent before he underwent radiation treatment in violation of section 351, read in conjunction with section 4131 and § 17.34.[57] We agree with the parties that whether the 1980 Board decision committed CUE by failing to address informed consent in the context of these three provisions is properly before us.[58]

Unfortunately, things are not quite so black and white in terms of our jurisdiction because appellant has made arguments about sources of law that go beyond the two statutes and one regulation she cited in her CUE motion. In particular, appellant makes arguments concerning 38 C.F.R. § 3.358, section 351's implementing regulation in 1980, and the common law. The difficulty arises because we have held that "an appellant can flesh out and rephrase [her] argument" when appealing an adverse CUE determination and that the "some degree of specificity" requirement "is broad enough to allow an appellant to rephrase and provide additional argument and support for the same basic CUE argument."[59] But an entirely different theory of CUE is prohibited.[60] So, we must consider how appellant uses § 3.358 and the common law on appeal.

---

[55] *George v. Wilkie*, 32 Vet.App. 318, 323 (2020) (quoting *Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002)).

[56] *Russell*, 3 Vet.App. at 315 (cleaned up).

[57] R. at 198.

[58] *See* Appellant's Supplemental (Supp.) Br. at 1-2; Secretary's Supp. Br. at 1-2.

[59] *Jordan v. Principi*, 17 Vet.App. 261, 271 (2003) (citations and emphasis omitted).

[60] *Andre*, 301 F.3d at 1361.

She may not make a new allegation of CUE based on these sources of law, but she may "provide additional argument and support" for the CUE theories she specifically presented to the Board.[61] We acknowledge that this is a slippery question, but it is one that we must address.

There is no doubt that appellant did not present a theory to the Board below that the 1980 Board decision contains CUE based on a misapplication (or nonapplication) of § 3.358. There is no mention of this regulation in her CUE motion.[62] So, we lack jurisdiction to address such a theory on appeal.[63] But that does not mean that any reference to § 3.358 is off-limits. The Board in the decision on appeal relied on changes to the statute's implementing regulation (§ 3.358 in 1980 and § 3.361 today) to explain when a failure to obtain informed consent first warranted compensation under section 351 and its successor statute, section 1151.[64] Because we are tasked with reviewing the 2021 Board's analysis, we have jurisdiction to consider § 3.358 when assessing whether the 2021 Board's conclusion that the 1980 Board decision did not contain CUE was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law on the theories before the Board.

However, in her briefing and at oral argument, appellant does more than address the 2021 Board's analysis of § 3.358 in support of its decision on her CUE motion. Instead, she raises a more specific argument regarding § 3.358(c)(3) and whether it provides a "nonexhaustive list" of what constitutes proximate causation for VA compensation,[65] apparently contending that the 1980 Board erred in its application of that provision.[66] As appellant conceded in her supplemental brief, this argument was not a part of her September 2020 CUE motion before the Board.[67] Because appellant did not raise the specific allegation of CUE based on the meaning of § 3.358(c)(3) in her CUE motion before the Board, we do not have jurisdiction to address it. Therefore, we will dismiss the appeal to the extent it is based on this allegation of CUE.

---

[61] *Jordan*, 17 Vet.App. at 271.

[62] R. at 195-201.

[63] *See Johnston v. Nicholson*, 421 F.3d 1285, 1288 (Fed. Cir. 2005) ("The requirement of specificity . . . is properly read to require that the veteran, represented by counsel, identify before the Board the particular provision in the regulations on which he [or she] relies.").

[64] R. at 10-11.

[65] Oral Argument (O.A.) at 28:28-31:00, *Hatfield v. McDonough*, U.S. Vet. App. No. 21-5125 (oral argument held Dec. 13, 2022), http://www.uscourts.cavc.gov/documents/Hatfield2.MP3.

[66] *See id.*; *see also* Appellant's Br. at 8-9.

[67] Appellant's Supp. Br. at 5; *see* R. at 195-96 (CUE motion).

Finally, we consider appellant's arguments on appeal concerning the common law. This argument does not appear in her September 2020 CUE motion and the Board did not address it. So, insofar as appellant may be arguing that it was CUE for the *1980* Board not to consider the state of the common law, we lack jurisdiction to address this theory of CUE and will dismiss the appeal to the extent appellant advances that theory. However, and as we discuss further below, we understand appellant to principally be arguing that the state of the common law in 1980 informs an understanding of how section 351 was interpreted in 1980. We will consider the argument in this limited way as permissible additional support of the CUE argument appellant advanced before the Board.

### C. The Meaning of Section 351 in 1980

Having established the Court's jurisdiction, we turn now to the law as it existed at the time of the 1980 Board decision, starting with section 351. The Board's conclusion that there was no CUE in the 1980 decision under section 351 is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

We begin our discussion by considering the language of section 351 in 1980, as quoted above. As the parties agree, that statute did not at that time contain, nor has it ever in any incarnation contained, language about the lack of informed consent forming a basis for compensation.[68] But the parties also agree that, presently, the failure to obtain a patient's informed consent can support the award of compensation under section 1151, the successor to section 351.[69] Where the parties diverge is on the question of how long the failure to obtain a patient's informed consent has supported an award of disability-like compensation. Appellant essentially argues that the law has always provided for compensation based on a failure to obtain informed consent concerning the provision of VA medical care and certainly did so as of October 1980.[70] In connection with this principal statutory argument, appellant contends that because section 4131 and § 17.34, both of which provided that VA medical professionals were required to seek a

---

[68] *See* Appellant's Br. at 7; Secretary's Br. at 13.

[69] *See* Secretary's Br. at 10 (citing *Hatfield I*, 33 Vet.App. at 334).

[70] Appellant is clear that her argument is not based on any retroactive application of the law but rather that the law at the time of the October 1980 Board decision allowed compensation under then-section 351 based on a failure to obtain a patient's informed consent. Appellant's Supp. Br. at 1-6. Thus, she contends that her position is consistent with recent caselaw, including the Supreme Court's decision in *George*, 142 S. Ct. 1953, and our decision in *Perciavalle*, 35 Vet.App. 11. Appellant's Supp. Br. at 8-12.

12

patient's informed consent before treatment, were in effect in 1980, informed consent also provided a basis for compensation under section 351 at the time of the 1980 Board decision. For his part, the Secretary tracks the Board's reasoning, focusing principally on developments after 1980 in the implementing regulations and caselaw that demonstrate that the law changed concerning whether the failure to obtain a patient's informed consent qualified under the proximate causation requirement under the successor to section 351, section 1151.

We think the Secretary has the better of the argument and that the Board did not err when it concluded there was no CUE in the 1980 Board decision. Although statutory interpretation always begins with the plain language of the statute,[71] as noted above the text of section 351 is silent on the issue of informed consent. At the risk of stating the obvious, the language of the statute certainly does not include the term "informed consent." But the reality is that we find nothing in the plain language of the statute that could be construed (let alone undebatably so) as encompassing informed consent. In addition, section 351 did not contain any reference to negligence or discuss any possible reasons that VA treatment may lead to injury. We simply find no words in the plain language of section 351 that even remotely point to VA's failure to obtain informed consent being a basis for the award of compensation.

Given section 351's silence on the failure to obtain informed consent as the basis for an award of compensation, in the balance of this section we look to the legislative history of the statute and what that history tells us about the place of informed consent in the section 351 compensation scheme in 1980.[72] Along the way, we also address appellant's arguments about the statutory and regulatory requirements in place in 1980 that required VA to obtain a patient's informed consent as a matter of medical practice. Then, in the following section, we consider the changes in the regulations implementing the statute to determine when informed consent first entered the picture in terms of compensation under section 351 or section 1151.

---

[71] *See McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see also Williams v. Taylor*, 529 U.S. 420, 431 (2000).

[72] *See, e.g.*, *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 18 (1979) (holding that Congress's "intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment"); *DiGiovanni v. Traylor Bros., Inc.*, 75 F.3d 748, 755 (1st Cir. 1996) (stating that, "[n]ormally, the task of interpretation must begin with the statutory language," but where Congress did not define duties of care, the court "turn[s] to relevant legislative history for guidance"); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1089 (7th Cir. 1982) ("Legislative history can be a key to interpreting congressional intent.").

As we noted above, the concept underlying section 351 in 1980 and section 1151 today is to provide compensation under certain circumstances to those injured as a result of VA medical treatment as if those injuries were service connected. This means of receiving VA compensation first appeared in the 1924 World War Veterans' Act.[73] In 1933, Congress repealed the World War Veterans' Act. However, Congress reinstated the statute in 1934, including the provision for disability-like compensation based on injuries resulting from VA medical care.[74] This concept became codified at 38 U.S.C. § 351 in 1958.[75]

Nothing in the legislative history suggests that Congress thought that a failure to obtain a patient's informed consent before treatment or other care was a basis upon which to award compensation under what became section 351 in 1958. Indeed, the only time that "consent" is mentioned in the legislative history from 1924 to 1958 was a passing reference in a hearing in 1924. Specifically, at a hearing on the World War Veterans' Act, General Frank T. Hines, then-director of the United States Veterans' Bureau,[76] testified about compensation for those injured during VA treatment. In his testimony, quoted in *Gardner I*, he stated, "'[i]n the hospital, *at the patient's consent*, he may undergo a certain surgical operation, with the hope, on the best advice available, that it will overcome some disability, but instead of doing that it goes in the other direction.'"[77]

While this testimony indicates Congress at least heard the term "consent" when it was considering whether to enact what would later become section 351, Congress did not enact anything into law about consent in or after 1924. In fact, in 1930, in response to a question about compensation for a non-service-connected disability resulting from VA treatment, the comptroller general informed the director of the Veterans' Bureau that the intent of the 1924 amendment to the World War Veterans' Act was "'to afford veterans some measure of compensation in those cases

---

[73] *Gardner v. Brown* (*Gardner I*), 5 F.3d 1456, 1460 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994).

[74] *Id.* at 1462.

[75] Veterans' Administration Benefits Consolidation Act of 1958, Pub. L. No. 85-857, 72 Stat. 1105, 1124 (Sept. 2, 1958).

[76] The United States Veterans' Bureau is an early incarnation of what is today the Department of Veterans Affairs. *See Gardner I*, 5 F.3d at 1457 n.1 (referring to the Veterans' Bureau as a "precursor[]" to the Department of Veterans Affairs).

[77] *Id.* at 1460 (emphasis added) (quoting *World War Veterans' Legislation: Hearings on H.R. 7320 Before the H. Comm. on World War Veterans' Legislation*, 68th Cong., 1st Sess. 113, 114 (1924)).

in which the disability arises through accident, carelessness, negligence, lack of proper skill, error in judgment, etc., on the part of any person charged with a duty respecting the hospitalization, or medical or surgical treatment.'"[78] There simply is no evidence to suggest that principles of informed consent were a part of the discussion at any point at which Congress was considering what would become section 351.

The statutory language remained essentially unchanged for our purposes from 1958 to the mid-1960s.[79] Congress again amended the statute in 1976 when it enacted minor changes to remove gendered language from section 351 as part of the Veterans Disability Compensation and Survivor Benefits Act of 1976.[80] It is this version of the statute that was in effect in 1980. After the 1976 changes, section 351 remained essentially the same, except for its relocation to section 1151, until the Supreme Court's decision in *Gardner II*, to which we will return in the next section.

But the year 1976 is important for a reason beyond the minor gendered-language-related amendments to section 351. The 1976 amendments to section 351 also bring us to appellant's arguments centered on 38 U.S.C. § 4131[81] and 38 C.F.R. § 17.34[82] that were in effect at the time of the 1980 Board decision.[83] This statute, enacted in 1976, and its later-adopted implementing regulation specifically required VA medical professionals to obtain a patient's informed consent for treatment or other medical care. In 1976, Congress enacted section 4131 as part of the Veterans Omnibus Health Care Act of 1976.[84] Congress spoke of section 4131 as a part of "a new subchapter . . . entitled 'Protection of Patient Rights.'"[85] Congress noted that the purpose of the section was to ensure that "no patient care is furnished under the provisions of title 38, without the full and informed consent of the subject-patient."[86] Congress made no reference to section 351 (or

---

[78] *Id.* at 1462 (quoting No. A-31895, 9 Comp. Gen. 515, 516 (1930)).

[79] *See* Pub. L. No. 87-825, § 3, 76 Stat. 948, 950 (Oct. 15, 1962) (omitting an application deadline and adding language about civil actions); *see also* Pub. L. No. 91-24, § 3, 83 Stat. 33, 33 (June 11, 1969) (deleting "hereafter" and adding "on or after December 1, 1962").

[80] Pub. L. No. 94-433, § 404(19), 90 Stat. 1374 (Sept. 30, 1976).

[81] Today, this provision is located at 38 U.S.C. § 7331.

[82] Today, this provision is located at 38 C.F.R. § 17.32.

[83] Appellant's Br. at 7.

[84] Pub. L. No. 94-581, § 111(a), 90 Stat. 2842, 2849 (Oct. 21, 1976).

[85] 94 Cong. Rec. 30599, 30612 (Sept. 16, 1976).

[86] S. Rep. No. 94-1206, at 115 (1976).

anything about the provision of disability-like compensation) in section 4131. Thus, it seems clear to us that in 1976, while Congress considered section 351 a part of VA compensation benefits, section 4131 and the informed-consent requirements were directed to VA health care and the duties of medical professionals. Again, there simply is nothing in the statutory language or legislative history of section 351 or section 4131 that suggests that Congress considered the requirement of informed consent to be connected with the provision of disability compensation.

And nothing changed in the language of section 4131 between its enactment in 1976 and October 1980, when the Board issued the decision that is the subject of appellant's CUE motion. In 1980, section 4131 provided:

> The Administrator, upon the recommendation of the Chief Medical Director and pursuant to the provisions of section 4134 of this title, shall prescribe regulations establishing procedures to ensure that all medical and prosthetic research carried out and, to the maximum extent practicable, all patient care furnished under this title shall be carried out only with the full and informed consent of the patient or subject or, in appropriate cases, a representative thereof.[87]

There is nothing in this statutory language to suggest that there was any connection between the informed-consent requirement and the provision of disability-like compensation under what was then section 351.

The same lack of connection is apparent from the regulation VA adopted concerning the informed-consent requirement VA imposed on its medical professionals, 38 C.F.R. § 17.34. In 1980, § 17.34 defined "informed consent" as "the knowing granting of permission by an individual or the individual's legally authorized representative, which is freely given without any element of fraud, duress, deceit, or other form of coercion to the administration or performance of a proposed diagnostic or therapeutic procedure or course of treatment."[88] The regulation also detailed what must be provided to ensure consent is informed. But in 1980, neither the informed-consent statute nor the regulation mentioned section 351 or in any way referenced that type of compensation, and section 351 (and, as we will discuss, its implementing regulation, § 3.358) did not refer to informed consent. In fact, as we will discuss below, a connection between the failure to obtain informed consent and the provision of disability-like compensation occurred well after the 1980 Board decision. In short, nothing but appellant's argument connects the distinct concepts of the

---

[87] 38 U.S.C. § 4131 (1976 & Supp. III 1980).

[88] 38 C.F.R. § 17.34 (1980).

requirement for medical professionals to obtain a patient's informed consent and the provision of VA compensation for a failure to do so.

So, where are we now? At this point, we know that notions of informed consent did not appear in the governing statutes until 1976, as part of a patient's bill of rights. And we know that there is nothing in the statutory language or legislative history of the development of the law of either informed consent at VA or the provision of compensation for VA medical care to suggest Congress intended that a lack of informed consent provided a basis for disability-like compensation in 1980. In the next section, we'll explain why the Board was correct that the history of the regulations implementing section 351 and later section 1151 also provides no support for appellant's position. But before we do so, we must consider one other aspect of appellant's argument about the statutes.

Appellant would have us look at the common law more generally to support her view that in 1980, section 351 provided for compensation based on a failure to obtain a patient's informed consent before treatment.[89] Appellant contends that a lack of informed consent was considered a part of negligence law, and she generally cites several cases from various jurisdictions to support her position.[90] The problem is that these decisions show, at most, what the law was in some places in the United States in or around 1980. She fails to establish that these cases, or any similar authority, formed the backdrop for section 351. Stated differently, she points to nothing in the text or legislative history of section 351 to show that Congress intended to adopt common law negligence principles of informed consent as a basis for the compensation that is the subject of section 351. Indeed, as we noted above, the language of section 351 has remained essentially the same throughout the statute's history prior to *Gardner II*. Yet no one–including appellant–argues that Congress intended to include a lack of informed consent within the ambit of section 351 when Congress enacted it. And as we said, when we see Congress discussing informed-consent principles in 1976, Congress does so through a statutory scheme entirely distinct from the compensation-based section 351. This separation suggests that Congress was not swayed by (or, frankly, that Congress even considered) principles of common law negligence when in 1976 it enacted the minor amendments to section 351.

---

[89] Again, we note that the Court has jurisdiction to address this argument only to the extent that it helps us understand the meaning of section 351 in 1980.

[90] Appellant's Br. at 10-11.

And even if we assumed that the fleeting reference to "consent" in the early legislative history of section 351 (that is, in 1924) referred to common law concepts, appellant's argument would still not be convincing. This is because, in 1924, when General Hines remarked about consent,[91] a lack of consent was a basis of recovery (if at all) as the intentional tort of battery,[92] and not as a part of negligence law as it is today.[93] And, in 1930, when the comptroller general detailed the principles underlying what would become section 351, and referred to negligence-based concepts,[94] not intentional tort concepts, we know that consent was not a part of his discussion, as the common law did not include a lack of informed consent as a form of negligence for tort purposes at that time.[95]

In sum, and leaving aside for the moment VA's implementing regulations, to which we will turn next, appellant's CUE allegations fail to establish that the only reasonable interpretation of section 351 in 1980 included a failure to obtain a patient's informed consent before treatment or other care as a ground for the award of compensation. It certainly is not undebatable that informed consent was a ground for section 351 compensation under the law in effect at the time of the 1980 Board decision as is required to establish CUE.[96] And the 2021 Board's conclusion that appellant's allegation of error did not constitute CUE is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

*D. Regulations Implementing Section 351 and 1151*

In its June 2021 decision, the Board discussed section 351 as it existed at the time of the 1980 Board decision, and the Board noted that appellant failed to provide any support for her argument that section 4131 and § 17.34 meant that compensation under section 351 based on VA's failure to obtain a patient's informed consent for medical treatment was appropriate.[97] The Board further noted that "the statutes and regulations that now govern benefits under the section now

---

[91] *See Gardner I*, 5 F.3d at 1460-61.

[92] *See* Samuel D. Hodge, Jr., & Maria Zambrano Steinhaus, *The Ever-Changing Landscape of Informed Consent and Whether the Obligation To Explain a Procedure to the Patient May Be Delegated*, 71 ARK. L. REV. 727, 731 (2019).

[93] *Id.*

[94] *See Gardner I*, 5 F.3d at 1462.

[95] *See* Hodge & Steinhaus, *supra* note 92, at 731.

[96] *Russell*, 3 Vet.App. at 313-14.

[97] R. at 9.

codified at 38 U.S.C. § 1151 have substantially changed since the time of the Board's decision in October 1980."[98] The Board's discussion focused on the change in the implementing regulations, first 38 C.F.R. § 3.358, and then 38 C.F.R. § 3.361.[99] As we will discuss, the Board's examination of the regulatory changes is instructive and further underscores the lack of merit in appellant's arguments.[100]

Before turning to the regulatory history the Board discussed, we pause to reject appellant's contention advanced most fully at oral argument that it is error for the Board or the Court to consider *anything* that occurred after October 1980 when assessing whether there was CUE in the October 1980 Board decision.[101] As the Board recognized, and as we will discuss, the post-1980 regulatory changes provide context for how the statute (section 351) was understood at the time of the 1980 Board decision. Stated differently, by looking at what was added to the legal landscape later, we can see what was missing at the relevant time. The courts have not treated the correct interpretation of a provision in the context of CUE as if those provisions existed in a vacuum.[102] Instead, we have taken a more longitudinal view to understand a particular snapshot in time. Appellant's argument turns the well-established legal principle that subsequent interpretations and changes in law cannot constitute CUE[103] into a doctrine of enforced blindness. Appellant's argument amounts to the contention that the Board and the Court may never consider even the clearest indication that the law did not mean X at a given point in time by looking at *anything* after that time. There is no binding law that supports this argument. We affirmatively reject it.

Turning to the regulatory history on which the Board relied, in 1980 section 351's implementing regulation was § 3.358. It read in relevant part:

> Compensation is not payable for either the contemplated or foreseeable after results
> of approved medical or surgical care properly administered, no matter how remote,

---

[98] R. at 10.

[99] *Id.*

[100] As we discussed above, to the extent appellant attempts to argue that the October 1980 Board decision contained CUE based on a misapplication of § 3.358 or a failure to apply that regulation at all, we lack jurisdiction to consider that matter because it was not advanced before the Board as a theory of CUE. We consider the regulatory history to assess the Board's reasoning in rejecting the CUE theory appellant did make before the Board, a matter that, as we have explained, we have jurisdiction to consider.

[101] O.A. at 17:17-:31, 18:10-:32, 22:48-24:44.

[102] *See Perciavalle*, 35 Vet.App. at 34; *see also George*, 142 S. Ct. at 1960-61.

[103] *George*, 142 S. Ct. at 1960-61.

in the absence of a showing that additional disability or death proximately resulted through carelessness, negligence, lack of proper skill, error in judgment, or similar instances of indicated fault on the part of the Veterans' Administration. However, compensation is payable in the event of the occurrence of an "accident" (an unforeseen, untoward event), causing additional disability or death proximately resulting from Veterans' Administration hospitalization or medical or surgical care.[104]

We will start with the obvious. The regulation makes no mention of informed consent. This fact is highly significant when we consider that, by contrast, the current implementing regulation for section 1151, § 3.361, explicitly provides that "[t]o establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part . . . proximately caused a veteran's additional disability or death," a factor to be considered is whether "VA furnished the hospital care, medical or surgical treatment, or examination without the veteran's or, in appropriate cases, the veteran's representative's informed consent."[105] The current regulation provides that informed consent is determined by compliance with the requirements of § 17.32, which was formerly § 17.34. [106] In other words, the current regulation connects the informed-consent requirement for medical professionals and the provision of disability-like compensation, a connection that was missing before. Without more, simply looking at the regulation in place in October 1980 and the one in place today makes clear that, at a minimum, something significant had changed about how VA considered a lack of informed consent as it related to implementing sections 351 and 1151. The Board recognized this change in its analysis, noting that § 3.361 "explicitly identifies the provision of medical care without obtaining informed consent as a type of fault for which [section] 1151 benefits may be granted."[107]

But we do not have to rest merely on the self-evident change in the regulatory language because the regulatory history underscores the plain-language differences in the regulations. We begin in 1978, when VA amended § 3.358 to comply with a general counsel opinion about *accidents* that occur during medical treatment.[108] Appellant points to this general counsel opinion

_____

[104] 38 C.F.R. § 3.358(c)(3) (1980).

[105] 38 C.F.R. § 3.361(d)(1)(ii) (2022).

[106] *Id.*

[107] R. at 10.

[108] VA Gen. Couns. Prec. 2-78 (Oct. 1978).

to support her position that a failure to obtain a patient's informed consent was a ground upon which compensation could be awarded under section 351 in 1980.[109] It is true that the effect of certain statutory changes was "to provide, in certain instances, for payment of compensation for disability or death, resulting from [VA] hospitalization or medical or surgical care without regard to whether there was fault or negligence on the part of [VA]."[110] But the general counsel opinion says nothing–nothing at all–about informed consent or how that concept relates to negligence. We simply do not see how the opinion supports appellant's argument. This was the state of play in October 1980.

The first time we see a mention of consent in the regulatory history is 1995, following the 1994 Supreme Court decision in *Gardner II*. There, the Court invalidated the version of § 3.358 that contained a fault requirement for establishing entitlement to compensation under section 1151 because the Court held that the statute itself did not require a showing of fault on VA's part.[111] In response to the Supreme Court's decision, VA again amended § 3.358 to remove the "fault-or-accident requirement" and "instead provide[d] that compensation is not payable for the necessary consequences of proper treatment to which the veteran consented."[112] This is the first time the idea of consent shows up in the history of the section 1151 compensation provisions–15 years after the October 1980 Board decision that, appellant argues, contains CUE for failing to consider a failure to obtain informed consent. In the decision on appeal, the Board discussed the Supreme Court's invalidation of § 3.358 in *Gardner II* and noted that that change did not affect what the law was at the time of the 1980 Board decision, when the version of § 3.358 without any reference to informed consent was in place.[113]

When changing its regulation to comply with the Supreme Court's ruling, VA focused on a footnote in the Supreme Court's opinion that included the phrase "*volenti non fit injuria*."[114] VA noted that "[a]lthough the Supreme Court found that the statutory language simply requires a

---

[109] Appellant's Supp. Br. at 11.

[110] 43 Fed. Reg. 51015, 51015 (Nov. 2, 1978).

[111] 513 U.S. at 116.

[112] 60 Fed. Reg. 14222, 14222 (Mar. 16, 1995).

[113] R. at 11.

[114] 513 U.S. at 119 n.3.

causal connection between an injury or aggravation of an injury and VA [treatment]," the Supreme Court did not mean for every additional disability to be compensated under section 1151.[115] VA pointed to the Court's footnote noting that the Court did not intend to exclude the application of the doctrine of volenti non fit injuria, "which is sometimes loosely translated as 'assumption of the risk,' but more precisely refers to the doctrine of consent."[116] Thus, VA "revised," a word VA expressly used, § 3.358 to reflect the Supreme Court's decision "that [section] 1151 permits compensation for all but the necessary consequences of properly administered VA medical or surgical treatment or examination to which a veteran consented."[117]

The language VA used in the Federal Register indicates that the regulatory changes VA proposed in the wake of the Supreme Court's decision in *Gardner II* represented a departure from the way section 1151 compensation had previously been considered. VA specifically referred to the changes as "revising" the regulation, and, as we said, language about consent appears for the first time in connection with the provision of disability-like compensation in this context.[118] VA noted that "as reflected in the text of the rule, we have concluded that when the Supreme Court stated that compensation should not be payable for the necessary consequences of treatment to which the veteran 'consented,' the Court meant both express and implied consent."[119] Again, VA clearly saw the addition of a failure to obtain consent as a departure from the way section 1151 (and certainly section 351) compensation operated previously.

Congress also acted in response to *Gardner II*. Specifically, Congress amended section 1151 to clearly insert a fault requirement,[120] and, in 1998, VA again proposed changes to the implementing regulation to comply with the amended version of section 1151 Congress had enacted.[121] Specifically, VA proposed keeping § 3.358 in place to apply to claims before October 1997, the effective date of amended section 1151, and creating § 3.361 to implement Congress's

---

[115] 60 Fed. Reg. at 14222.

[116] *Id.*

[117] *Id.* at 14222-23.

[118] 38 C.F.R. § 3.358(c)(3) (1996) ("Compensation is not payable for the necessary consequences of medical or surgical treatment or examination properly administered with the express or implied consent of the veteran.").

[119] 60 Fed. Reg. at 14222.

[120] Pub. L. No. 104-204, § 422(a), 110 Stat. 2874, 2926 (Sept. 26, 1996).

[121] 63 Fed. Reg. 45004 (Aug. 24, 1998).

changes to section 1151. In the newly proposed regulation, § 3.361, a lack of informed consent appears as a factor for establishing proximate cause, and VA incorporated the requirements of § 17.32, the regulation that then imposed the requirement that VA medical professionals obtain a patient's informed consent.[122]

The 1998 proposed changes were rescinded due to improper notice and comment.[123] But VA proposed similar changes in 2002 and later adopted them in 2004. In proposing these changes, VA noted that "[p]roposed § 3.361(d)(1)(ii), concerning consent to care, treatment, or examination, is derived from current § 3.358(c)(3)" and "we propose to include a requirement that consent be informed, in accordance with 38 C.F.R. § 17.32."[124] Although appellant points to this language as indicating that consent was already a part of the law and not a change in the regulation, she fails to recognize that this revised regulation was "derived" from changes made in 1996. There simply is no connection to 1980.

Overall, the regulatory history shows that a failure to obtain a patient's informed consent became grounds upon which compensation was warranted under section 1151–in the 1990s, long after the 1980 Board decision. Indeed, nothing in the regulatory history supports the notion that such a failure was ever a basis for compensation under section 351. And at a minimum, appellant has not shown that the only reasonable interpretation of the regulation in 1980 included consideration of a failure to obtain informed consent. We conclude that the Board in 2021 was on solid ground when it considered this regulatory history as part of its analysis about why there was no CUE in the October 1980 Board decision.

### E. Summary

Section 351 in 1980 did not contain any reference to informed consent, nor did it incorporate the informed-consent provisions found at section 4131 and § 17.34. Appellant fails to point to any authority indicating that a failure to obtain a patient's informed consent supported an award of compensation under section 351 in October 1980. She points to nothing to show that it is undebatable that a failure to obtain informed consent was a basis upon which the October 1980 Board could award compensation under section 351. Therefore, the Board decision on appeal

---

[122] *Id.* at 45005-06.

[123] 64 Fed. Reg. 1131 (Jan. 8, 1999).

[124] 67 Fed. Reg. 76322, 76323 (Dec. 12, 2002).

finding no CUE in the October 1980 decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## IV. CONCLUSION

After consideration of the parties' briefs, oral argument, the record on appeal, and the governing law, the Court AFFIRMS the June 4, 2021, Board decision that the October 1980 Board decision did not contain CUE. To the extent that appellant raises CUE allegations involving the failure to comply with the common law or the misapplication of 38 C.F.R. § 3.358, we DISMISS the appeal as to these matters for lack of jurisdiction.